[Civ. No. 24119.    Second Dist., Div. One.    Dec. 30, 1959.]

LEROY R. BIERMAN, Appellant, v. HAGSTROM CONSTRUCTION COMPANY (a Corporation) et al., Respondents.

Monteleone & McCrory and Stephen Monteleone for Appellant.

Maurice H. Wallbert for Respondents.

WOOD, P. J.—Plaintiff appeals from a summary judgment dismissing the complaint.

The complaint alleged, among other things, as follows: At all times mentioned therein plaintiff was engaged in the painting, contracting, and construction business. He was licensed to conduct said business, and to do the construction work required by the subcontract referred to in the complaint. About May 7, 1954, defendant Hagstrom Construction Company entered into a written contract with the Housing Authority of the City of Los Angeles for the construction of a housing project. On May 20, Hagstrom entered into a written subcontract with plaintiff under the terms of which plaintiff agreed to do the painting and certain wood finishing work required under Hagstrom's contract with the Housing Authority. Between December 29, 1954, and October 19, 1955, plaintiff furnished labor and material on the project. On October 19, 1955, Hagstrom ordered plaintiff to leave the project, and thereafter Hagstrom caused the painting and wood finishing to be completed by persons other than plaintiff. Plaintiff suffered damages by reason of Hagstrom's failure to have the buildings ready to be painted; his failure to coordinate operations so other subcontractors would not interfere with plaintiff's work; his insistence that plaintiff use all painters sent by the union, regardless of whether they were experienced; his insistence that the painting be done in hot weather, which resulted in a quality of painting that was rejected by the Housing Authority.

Plaintiff also sought by the complaint to recover the reasonable value of labor and material alleged to have been furnished by him.

Defendants denied that they had breached their contract, and they denied the allegation that at all times mentioned in the complaint the plaintiff was a licensed contractor. They alleged that plaintiff had breached the contract, and that the work performed by plaintiff was unsatisfactory as the result of the improper quality of the paint used and plaintiff's failure to employ skilled painters. They also filed a cross-complaint in which they alleged that plaintiff had breached the subcontract in that he had failed and refused to perform

in accordance with the provisions of the contract, and as a result, Hagstrom was required to perform most of the work; certain work performed by plaintiff was defective and as a result Hagstrom was required to repair such defective work.

Thereafter defendants made a motion for a summary judgment dismissing the complaint on the ground that there was no merit to plaintiff's action.

In support of the motion, defendants filed an affidavit of Mr. Wallbert, one of their attorneys, and an affidavit of Mr. Haley, an employee of the Housing Authority.

Mr. Wallbert stated, in his affidavit, that attached thereto was a certificate which he had received from the registrar of contractors. In that certificate the registrar stated that plaintiff "holds contractor's license No. 59619, Classification C-33 (Painting and Decorating), which license was issued November 18, 1938 and was continuously in effect thereafter until June 30, 1941 when it expired. Said license was reissued March 10, 1952 and was continuously in effect until June 30, 1955 when it expired. Said license was renewed August 5, 1955 and has been continually in effect since that date and is currently renewed to June 30, 1959." The certificate was dated March 23, 1959. It appears from that certificate that plaintiff's contractor's license was not in effect for the period from June 30, 1955, to August 5, 1955.

Mr. Haley stated, in his affidavit, that from April 6, 1954, until the completion of the housing project, he was in charge of the project "upon behalf of the owner"; during the period from February through May, 1955, plaintiff had from two to eight painters working on the job; in the first week of July, 1955, plaintiff had 11 painters working on the job; during July, 1955, and the first week of August, 1955, plaintiff had from 13 to 18 painters working continuously (on working days) on the job. It appears therefrom that painters, employed by plaintiff, worked on the project during the period plaintiff's license was not in effect (June 30 to August 5, 1955).

In opposition to the motion plaintiff filed his affidavit, in which he stated that "he was duly licensed as a painting contractor by the State of California, at all times in said action mentioned except that through an oversight on his part, he failed to renew the license on June 30, 1955, by paying the required Five Dollar ($5.00) license fee; however, he did, on the 3rd day of August, 1955, make an application to have his license reissued and paid the required Five Dollars ($5.00)

for the license fee, by check hereto attached and made a part hereof.''

The check was dated August 3, 1955, and the cancellation stamp thereon shows that the check was paid on August 23, 1955, by the bank on which it was drawn.

The court granted defendants' motion for a summary judgment, and judgment was entered dismissing the complaint.

As above stated, plaintiff appeals from the judgment.

The question on the appeal is whether appellant is precluded by the provisions of section 7031 of the Business and Professions Code from maintaining the action.

Section 7031 of the Business and Professions Code provides, in part: ''No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action in any court of this State for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract.''

Section 7028 of that code provides that it is unlawful for any person to engage in the business or act in the capacity of a contractor without having a license. Section 7030 provides that any person who acts in the capacity of a contractor without a license is guilty of a misdemeanor. Section 7026 provides that the term contractor includes subcontractor. Section 7140 provides that licenses shall expire on June 30th of each year; a license may be renewed by the filing of a renewal application not later than June 30th upon forms prescribed by the board, and must be accompanied by the annual renewal fee. Otherwise a license, application for renewal of which has not been filed on or before June 30th, shall be ''ipso facto'' suspended until a renewal application is filed.

Section 7141 of that code provides that the filing of a renewal application within the time prescribed, authorizes operation as a contractor by the licensee until the actual issuance of the renewal license; provided, that the license of the applicant is not otherwise under a disciplinary proceeding.

Section 7144 of that code provides, in part: ''A license which is under suspension . . . by operation of law, may be renewed . . . provided . . . the filing of a renewal application form does not authorize the operation as a contractor until the actual issuance of the renewal license.''

Section 7145 of that code provides that the registrar may refuse the issuance of a renewal license, for the failure or

refusal of the licensee to complete the renewal application form prescribed by the board.

Appellant contends that he substantially complied with the code provisions relative to the licensing of contractors. He argues that during the period from June 30, 1955, until September 30, 1955, he was "granted a period of grace wherein he was entitled to receive all of the benefits under his subcontract, being possessed of all of the qualifications entitling him to continue with his contract, and, when he paid the required fees and penalty and his license renewed by operation of law, there was a substantial compliance with the license requirements."

In *Howard* v. *State*, 85 Cal.App.2d 361 [193 P.2d 11] it was said, at page 365: "The purpose of the act [licensing act] is to guard the public against the consequences of incompetent workmanship, imposition and deception. In order to procure a license an applicant is required to make a showing of good character and of a degree of experience and general knowledge of the building, health, safety and lien laws of this state, and of the rudimentary administrative principles of the contracting business, as the board deems necessary for the safety and protection of the public. (§§ 7068, 7069.) Willful breach of contract and other willful and fraudulent acts, causing material injury to another, furnish grounds for suspension or revocation of a license. (§§ 7109-7119.)"

It appears from the sections above referred to, regarding the procedure for the renewal of a contractor's license, that there is an important distinction between the effect of filing an application for a renewal not later than June 30 of each year and the effect of filing such an application after June 30 and not later than September 30. In the event the application is filed not later than June 30, the applicant for a renewal license may continue to operate as a contractor unless the license is suspended by the registrar in a disciplinary proceeding. In the event the application is filed after June 30, and not later than September 30, the applicant may not operate as a contractor either until the renewal license is issued (§ 7144) or until he applies for a renewal (§ 7141). We need not determine which section controls. It appears further that the renewal application must be made on a form prescribed by the registrar, and that the registrar may refuse to issue a renewal license in the event the licensee fails or refuses to complete the form. The purpose of the provision

regarding the use of the application form prescribed by the registrar is to enable the registrar to obtain from the applicant current information concerning the applicant. If the application is filed before the expiration of the current license (June 30) the registrar may determine, upon examination of the application, whether there is a basis for a disciplinary proceeding and, if he concludes there is such a basis, he may commence the proceeding. If the application is filed after the expiration of the current license, the registrar cannot determine, other than by independent investigation, whether there is a basis for commencing such a proceeding. Under the circumstances last mentioned a disqualified licensee might continue to operate as a contractor; whereas, if the application had been filed before the expiration of the license and the registrar had the information required to be stated therein, the registrar might have commenced a disciplinary proceeding before the disqualified licensee continued to operate as a contractor.

In *Harrison* v. *Butte Steel Buildings, Inc.*, 150 Cal.App. 2d 296 [310 P.2d 126], Harrison made a contract with Butte to furnish labor and material for a building. Prior thereto Butte had made a contract with a county for the construction of the building. Harrison's license as a general contractor was suspended from January 19, 1953, to May 19, 1953. His contract was made on April 3, 1953 (during the period of suspension). The work was commenced on April 15, 1953 (during the period of suspension), and was completed on August 26, 1953 (after the period of suspension). In an action by Harrison against Butte and Butte's surety on a labor and material bond, judgment was for defendants. In affirming the judgment in that action, it was said at page 303: "Therefore, appellant did not and could not prove that he 'was a duly licensed contractor at all times during the performance of such act or contract' as required by section 7031 of the Business and Professions Code . . . , and as a consequence appellant was precluded by the express terms of the section from maintaining any action for the collection of compensation for the performance of the contract."

In the present action, appellant's license was suspended from June 30, 1955, at least to August 3, 1955, and during that period of time, under the provisions of said section 7301, he was not authorized to act as a contractor. It is undisputed that during that period of time he acted under said contract and that a portion of the compensation he is seeking in the action is for labor and material furnished dur-

ing that period. Under such circumstances appellant was precluded by the express terms of section 7031 from maintaining the action. It appears that plaintiff had been paid more than $60,000 under the provisions of his contract, and that by his complaint he was seeking further compensation and also damages allegedly resulting from Hagstrom's alleged acts of omission and commission, above referred to,—such as failure to coordinate the work of other subcontractors, etc., and such as his requirement that painting be done in hot weather, etc. It appears from defendants' pleadings, above referred to, that defendants were asserting that plaintiff's work was not satisfactory and that defendant Hagstrom had to perform most of the work.

Appellant cites *Gatti* v. *Highland Park Builders, Inc.,* 27 Cal.2d 687 [166 P.2d 265]; *Citizens State Bank* v. *Gentry,* 20 Cal.App.2d 415 [67 P.2d 364]; and *Weiman* v. *Superior Court,* 51 Cal.2d 710 [336 P.2d 489]. In those cases it was held that the contractor had substantially complied with the licensing provisions of the code. Those cases are distinguishable from the present case. In the Gatti case the question was whether individuals, who were partners, could recover for work done by the partnership, which was not licensed. The individuals were licensed at all times during the performance of the work. In the other cases, wherein the question was whether a corporation could recover, it appeared that the individual who formed the corporation, or the corporation itself, had a license at all times during the performance of the work. In other words, in those cases someone had a license at all times during the performance of the work. In the present case there was a period of approximately five weeks when the plaintiff was not licensed.

The judgment is affirmed.

Fourt, J., and Bishop, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.