[S.F. No. 22048. In Bank. Mar. 10, 1966.]

LATIPAC, INCORPORATED, Petitioner, v. THE SUPERIOR COURT OF MARIN COUNTY, Respondent; J. W. LEE & CO., Real Party in Interest.

Burd, Hunt & Quantz, Peter Hunt and Herbert J. Friedman for Petitioner.

No appearance for Respondent.

Tinning & Delap, Dana Murdock, Robert Eshleman and Robert N. Sanford, Jr., for Real Party in Interest.

TOBRINER, J.—Latipac, Incorporated (hereinafter defendant) petitions for a writ of prohibition to restrain the respondent superior court from taking any further proceedings in an action on contract brought by the real party in interest, J. W. Lee & Co. (hereinafter plaintiff).

In this case defendant seeks to avoid its contractual obligation to plaintiff by reason of plaintiff's failure strictly to comply with the statutory provisions which govern the licensing of contractors. The statute in question, section 7031 of the Business and Professions Code, denies to unlicensed contractors the use of the courts for the recovery of sums owed to them for contracting services.[1] In view of the severity of

---

[1] At all times material, section 7031 provided: "No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action in any court of this state for the collection of com-

this sanction and of the forfeitures which it necessarily entails, our decisions record our reluctance to construe the statute more broadly than requisite to the achievement of its manifest purpose. We have not insisted on literal compliance in the situation in which the party seeking to escape his obligation has received the full protection which the statute contemplates. Examination of the facts of the present case discloses that it falls within the ambit of the doctrine of ''substantial compliance'' as that doctrine has been elaborated by our courts in applying section 7031.

Defendant Latipac, Incorporated, seeks to restrain the respondent court from hearing an action brought by plaintiff, J. W. Lee & Co., to recover for labor and materials furnished defendant pursuant to written contract. We must, therefore, resolve the issue of whether section 7031 bars plaintiff's recovery.

On March 22, 1962, plaintiff contracted to grade and fill certain land owned by defendant in Marin County. Plaintiff alleges that of the total contract price of $740,000, well over one-half ($432,370.07) remains unpaid. It seeks to recover this sum on its own behalf and, since it alleges that its claim against defendant is the only substantial asset of the corporation, on behalf of its creditors as well.

The records of the registrar of corporations reveal that plaintiff possessed a valid contractor's license at the time the parties executed the contract. Because of plaintiff's failure to submit a renewal application and the $30 renewal fee, that license expired on June 30, 1963. At the time of such expiration, plaintiff had been performing under the contract for 15 months. It continued to perform and completed the job on April 28, 1964. Plaintiff actually renewed its license on June 26, 1964. Since plaintiff continued to perform under the contract after the expiration of its license, defendant urges that section 7031 bars plaintiff from recovering any part of the contract price.

Nothing in the record suggests that plaintiff's failure to make timely application for renewal of its license evidenced any apprehension on its part that such renewal would be denied. On the contrary, when plaintiff did submit its application and renewal fee, the registrar issued the renewal routinely without further examination. Moreover, plaintiff

---

pensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract. . . .''

explains that it assigned the responsibility for renewing the license to its office manager, and that the manager suffered an emotional breakdown and subsequent commitment to a mental institution. As a result the license was not promptly renewed.

Although plaintiff thus failed literally to conform to the commands of section 7031 of the Business and Professions Code, the courts of this state have not insisted upon such strict observance if it would transform the statute into an "unwarranted shield for the avoidance of a just obligation." (*Gatti* v. *Highland Park Builders, Inc.* (1946) 27 Cal.2d 687, 690 [166 P.2d 265].) If the facts clearly indicate that the contractor has "substantially" complied with the statute and that such compliance has afforded to the obligor the protection contemplated by the statute, we have rejected the obligor's attempt to escape liability. (*Gatti* v. *Highland Park Builders, Inc. supra*; *Weiman* v. *Superior Court* (1959) 51 Cal.2d 710 [336 P.2d 489]; *Citizens State Bank* v. *Gentry* (1937) 20 Cal.App.2d 415 [67 P.2d 364]; *Oddo* v. *Hedde* (1950) 101 Cal.App.2d 375 [225 P.2d 929].) As Justice Traynor has stated, the test must be whether the contractor's "substantial compliance with the licensing requirements satisfies the policy of the statute." (*Lewis & Queen* v. *N. M. Ball Sons* (1957) 48 Cal.2d 141, 149 [308 P.2d 713].) For nearly three decades we have developed and applied to cases arising under section 7031 the doctrine of "substantial compliance"; during that entire period the Legislature has indicated no hint of disapproval of this construction.

Defendant, indeed, does not attack the doctrine but contends only that the cases which have relied upon it differ in certain particulars from the case before us and that, therefore, we may not properly apply the doctrine here. Although nothing in the prior cases suggests that the doctrine fits only the identical factual patterns there adjudicated, we need not now undertake to define the outer limits of its proper application. Examination of the record reveals that the instant case presents each of the elements upon which the courts have in the past relied for the application of the doctrine of substantial compliance. Since all these elements here concur, we need not determine whether any of them, singly or in more limited combination, would constitute "substantial compliance."

We proceed to an examination of these elements: (1) the fact that plaintiff held a valid license at the time

of contracting, (2) that plaintiff readily secured a renewal of that license and (3) that the responsibility and competence of plaintiff's managing officer were officially confirmed throughout the period of performance of the contract.

1. *Plaintiff held a valid license at the time of contracting.*

Plaintiff possessed a valid license at the time its existence was crucial to the decisions of the other contracting party and to the prospective subcontractors and other creditors who might extend credit in reliance upon the validity of that contract. The key moment of time when the existence of the license becomes determinative is the time when the other party to the agreement must decide whether the contractor possesses the requisite responsibility and competence and whether he should, in the first instance, enter into the relationship. The license, as an official confirmation of the contractor's responsibility and experience, then plays its important role. Then, too, it serves as a basic determinant in the decision of prospective subcontractors and other creditors as to whether to extend credit to the contractor on the strength of the contract. At the date of the execution of the instant contract plaintiff held an unquestionably valid contractor's license. Indeed, plaintiff had possessed such a license ever since 1957; plaintiff held that license for 17 months *after* the date of the execution of the contract.

In determining whether or not a contractor has "substantially complied" with the statute and whether such substantial compliance has afforded the other party the effective protection of the statute, the courts have accorded great weight to the significant moment of the entrance of the parties into the relationship. The contractor who holds a valid license at the time of contracting executes a contract valid at its inception both as between the parties and as to third parties who might rely upon it.

In *Gatti* v. *Highland Park Builders, Inc., supra,* 27 Cal.2d 687, plaintiff Gatti held a valid contractor's license at the time he entered into a contract with the defendant. Later, the parties agreed that Gatti should complete his performance in partnership with his foreman. Like Gatti, the foreman had possessed a valid license at the time of the execution of the contract. Defendant sought to escape liability on the contract by reason of the plaintiffs' failure to secure the partnership license required by section 7029. In holding that the plaintiffs had "substantially" complied with the statute and that the defendant could not find shelter behind section 7031, this

court placed stress upon the fact that Gatti and his foreman were licensed at the time of contracting. It found the case distinguishable from prior cases "in that at the time the contract between Gatti and defendant was made, both plaintiffs possessed contractor's licenses in their own names as individuals."[2] (P. 689.)

Similarly, in *Citizens State Bank* v. *Gentry, supra,* 20 Cal. App.2d 415, 419-420, apparently the first of the substantial compliance cases, the court noted: "In none of the cases cited by appellant did the party suing have a license at the time of entering into the contract and then make an application for a renewal in any manner, such as was done here."

As a corollary, the *absence* of a license at the time of contracting has figured prominently in decisions in which our courts have denied recovery for want of substantial compliance. In *Steinwinter* v. *Maxwell* (1960) 183 Cal.App.2d 34 [6 Cal.Rptr. 496], the court thus explained its inability to find substantial compliance: "These cases [*Gatti* and *Gentry*] do acknowledge that under certain circumstances substantial compliance with the statute is sufficient. However, it should be pointed out that in each of these cases the contractor did have a valid license at the time the contract was executed and therefore at its inception the contract was valid. The effect of the ruling in these cases is that the subsequent changes in the license status of the contractor did not invalidate a contract that was valid at its inception." (Pp. 37-38.)

2. *Plaintiff readily secured a renewal of its license.*

■ Just as plaintiff's possession of a valid contractor's license at the time of contracting attests to its competence and responsibility at the inception of the contract, so the renewal of its license after completion of performance lends confirmation to plaintiff's continuing competence and responsibility during the period of performance. Nothing in the record suggests that plaintiff's fitness to enjoy a license was subject

---

[2]Defendant urges that the court found "substantial compliance" in *Gatti* because the plaintiffs continued to possess valid individual contractor's licenses throughout the period of performance. Language in certain other cases lends support to this reading. (*Loving & Evans* v. *Blick* (1949) 33 Cal.2d 603, 608 [204 P.2d 23]; *Bierman* v. *Hagstrom Construction Co.* (1959) 176 Cal.App.2d 771, 777 [1 Cal.Rptr. 826, 82 A.L.R.2d 1424].) It is significant, however, that the majority in *Gatti* did not even state that the partners did in fact possess valid licenses throughout the period of performance. Moreover, in its summary of the factors which led to its decision, the *Gatti* court mentioned only the possession of valid licenses "*when the contract was made.*" (P. 691; italics added.)

284

to variation in the interval between the expiration and renewal of its license.

We have referred to the case of *Gatti* v. *Highland Park Builders, Inc., supra,* 27 Cal.2d 687, and to the significance which this court there attached to the fact that the contractor was licensed at the time of contracting. The other consideration which led this court to find "substantial compliance" in *Gatti* was the fact that, although plaintiffs failed to secure the required partnership license at the time they began to perform on a partnership basis, they did secure such a license three months later. The court concluded that the issuance of this license gave further proof of the fulfillment of the policy of the statute because the fitness of the plaintiffs to enjoy a partnership license was "necessarily considered, and favorable action was taken thereon" when they did eventually secure a partnership license. (P. 689.) (See also *Weiman* v. *Superior Court, supra,* 51 Cal.2d 710.) Similarly, in the present case, plaintiff's competence and responsibility were necessarily considered and confirmed when the renewal license issued.

This court has indicated that belated compliance with the statute does not in itself constitute substantial compliance if the *initial* acquisition of the required license postdates the *completion* of performance under the contract. (*Loving & Evans* v. *Blick, supra,* 33 Cal.2d 603.) That case does not, however, foreclose us from according significance to a contractor's successful, although belated, renewal of a license which it held at the *inception* of the contract. ▪ In the absence of any indication that plaintiff's fitness to enjoy a license fluctuated between the expiration and renewal of its license, we may properly accord weight to that renewal in determining whether the policy of the statute has been satisfied.

More closely relevant to the present case than the decision in *Loving* is *Bierman* v. *Hagstrom Construction Co., supra,* 176 Cal.App.2d 771. There, as in the present case, the contractor possessed a valid license at the time of contracting and later secured a renewal some weeks after the license had expired. The court nevertheless denied him recovery, distinguishing the "substantial compliance" cases on the ground that "in those cases *someone* had a license at all times during the performance." (P. 777, italics added.) We have already indicated our doubt concerning the accuracy of this reading of the prior decisions. Nevertheless, without approving the apparent holding of the *Bierman* court that possession of a license by "someone" is the sole determinative condition for

a finding of "substantial compliance," we proceed to note that such condition was met in this case.

3. *The responsibility and competence of plaintiff's managing officer were officially confirmed throughout the period of performance of the contract.*

■ The pattern of the statute evinces a legislative determination that the fitness of a corporation to enjoy a contractor's license lies in the competence and experience of the individual who qualifies on its behalf. A corporate applicant qualifies for a license by demonstrating that one of its members, the "responsible managing officer," possesses the requisite knowledge and experience. (Bus. & Prof. Code, § 7068, subd. (c).)[3] Section 7068.1 requires that the individual who qualifies on behalf of the corporation "shall be responsible for exercising such direct supervision and control of his employer's or principal's construction operations as is necessary to secure full compliance with the provisions of this chapter and the rules and regulations of the board relating to such construction operations. . . ."[4] (See *Fechi* v. *Trojan Construction Co.* (1960) 185 Cal.App.2d 121 [8 Cal.Rptr. 138].)

■ Plaintiff's "responsible managing officer" is Mr. J. W. Lee. It is by virtue of Mr. Lee's qualifications that plaintiff secured and holds its contractor's license. Mr. Lee and his associates conduct their affairs through a number of related corporations. The qualifications of Mr. Lee form the basis for the licenses of a number of these corporations. One of them, San Leandro Rock Co., possessed a valid contractor's license throughout the period that plaintiff was performing its contract with defendant. The existence of this license necessarily evidences an official determination of the experience and competence of Mr. Lee, the same experience and competence which would have been in issue in a consideration of plaintiff's application for renewal of its license. This official

---

[3]This individual must display "such degree of knowledge and experience in the classification applied for, and such general knowledge of the building, safety, health and lien laws of the State and of the administrative principles of the contracting business as the board deems necessary for the safety and protection of the public." (Bus. & Prof. Code, § 7068.)

Section 7071 imposes the additional requirement that the directors of the corporation meet certain standards of good character. The record contains no suggestion that the character of plaintiff's directors oscillated in the period between the expiration and renewal of its license.

[4]The fact that the statutory responsibility of the "responsible managing officer" extends only to the "construction operations" of the contractor should allay any suspicion that plaintiff acted improperly in delegating to its office manager the responsibility for renewing its license.

confirmation of Mr. Lee's qualifications *throughout the period of performance* should exorcise any remaining doubt that the policy of the statute has been satisfied in this case.

Defendant urges that this court may not consider the existence of the license of one entity as tending to confirm the qualifications of another, even in a situation in which the same facts determine the fitness of both to enjoy licensed status. The decided cases do not support defendant's contention. In *Gatti* v. *Highland Park Builders, Inc., supra,* 27 Cal.2d 687, the belatedly-acquired partnership license to which this court accorded such great significance was not in fact that of the plaintiff partnership. It was, rather, the license of *another* partnership which, in addition to the plaintiffs, embraced a third party and which had no relation to the contract which formed the basis of the action. Nevertheless, this court gave weight to the acquisition of that license on the ground that "any matters which might form the basis of legitimate inquiry by the licensing board" in determining the fitness of plaintiffs to enjoy a license were "necessarily considered" and resolved in connection with the issuance of the license to the other partnership. (P. 689.)

Similarly, in *Citizens State Bank* v. *Gentry, supra,* 20 Cal. App.2d 415, the court, in sustaining recovery by an individual contractor despite the expiration of his license, laid stress on the fact that, from the expiration of his license until the completion of performance, a corporation controlled by him possessed an outstanding, valid license which presumably rested on his qualifications.[5]

The case of *Steinwinter* v. *Maxwell, supra,* 183 Cal.App.2d 34, which defendant cites to us does not support its contention. In that case the court denied recovery to a partnership with only one licensed partner despite the fact that the qualifications of both partners had necessarily been established in connection with the issuance of a license to a corporation con-

---

[5]Defendant seeks to distinguish these cases on the ground that the entity which held the license was legally liable on the contract which formed the basis of the action. This contention cannot stand. In the first place, it is far from clear that the license holders were in fact liable on the contracts. In *Gatti,* nothing whatever indicates that the other partnership was liable on the plaintiffs' contract. In *Gentry,* the court states only that performance proceeded "under the auspices" of the corporation.

No court has taken the view of these cases which defendant urges. This court has summarized its understanding in the following language: "In both the *Gatti* and *Gentry* cases, any matter that might have formed the subject of inquiry by the licensing board in determining whether to issue an additional license was necessarily considered in connection with the licenses actually issued." (*Lewis & Queen* v. *N. M. Ball Sons, supra,* 48 Cal.2d 141, 149.)

trolled by them. This ruling did not rest upon a conclusion by the court that the existence of the corporation's license failed to confirm the qualifications of the unlicensed partner. Rather the court noted that, even if that partner's qualifications were accepted, indeed *even if he had held a valid individual contractor's license,* the partners would still necessarily have been required to secure a *partnership* license as required by section 7029. The court stated: "The contractors·. . . contend that where both members of the partnership have been approved by the licensing board, *as they were in this instance,* for the issuance of the corporation license, the purpose sought to be accomplished by the statute, i.e., the assurance of reliable, honest and competent contractors is satisfied. However, this argument ignores the provisions of section 7029 . . . which specifically requires that, even if both partners have individual licenses, they still must obtain an additional license if they combine to jointly act in the capacity of a contractor." (P. 38; italics added.)

To the extent that the court accepted the contention that the existence of the corporation's license confirmed the qualifications of the unlicensed partner, the *Steinwinter* decision supports our conclusion in this case. To the extent, however, that *Steinwinter* turns on the construction of section 7029, it raises questions not here relevant.[6]

Under all the circumstances of this case, we cannot doubt that it is one in which the policy of the licensing statute has been effectively realized, and that defendant has received in full measure the protection intended by the Legislature. Fidelity to precedent and considerations of equity each preclude us from requiring the wholly gratuitous enrichment of defendant at the expense of plaintiff and its creditors. We are not disposed to decree vast forfeitures in the aid of no ascertainable public policy.

[6]It might appear anomalous that a court which would accept the contention that the existence of the corporation license established the qualifications of the unlicensed partner was nevertheless unwilling to conclude that confirmation of the qualifications of both partners would establish the qualications of the partnership. The position of the court becomes understandable, however, in light of the fact that section 7029 explicitly requires an *additional* license, even where all of the partners are licensed. Because of the obscurity of the policy which underlies the requirement of section 7029, the courts have found it difficult to determine that this policy has been satisfied in a given case. The question is now of limited importance since the statute was amended in 1961 to provide that the sanction of section 7031 shall not be imposed for lack of a partnership license when all the partners are individually licensed. (Stats. 1961, ch. 1325, § 1.)

The alternative writ of prohibition is discharged and the writ prayed for is denied.

Peters, J., Peek, J., and Burke, J., concurred.

MOSK, J.—I dissent.

In this case a contractor seeks to recover the balance due on a construction contract for work performed in part while lacking a valid license required by the Contractors License Law. (Bus. & Prof. Code, div. 3, ch. 9.) Such an action is barred as a matter of law by Business and Professions Code section 7031.[1] The contractor, moreover, cannot bring his claim within that small group of exceptions developed by the courts in cases in which at least one licensee was on the job at all times.

Although making passing reference to "fidelity to precedent," the majority opinion emphasizes "considerations of equity" which are said to "preclude us from requiring the wholly gratuitous enrichment of defendant at the expense of plaintiff and its creditors. We are not disposed to decree vast forfeitures in the aid of no ascertainable public policy." But even if such matters were meritorious—which petitioner has denied—they may not be considered in an action barred by the express terms of section 7031.[2] As we explained in *Lewis & Queen* v. *N. M. Ball Sons* (1957) 48 Cal.2d 141, 150-151 [308 P.2d 713], "One answer to this contention is that, even in the absence of a provision such as section 7031, the courts generally will not enforce an illegal bargain or lend their assistance to a party who seeks compensation for an illegal act. The reason for this refusal is not that the courts are unaware of possible injustice between the parties, and that the defendant may be left in possession of some benefit

---

[1]Throughout the period in issue section 7031 provided: "No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action in any court of this State for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that *he was a duly licensed contractor at all times during the performance of such act or contract,* except that such prohibition shall not apply to contractors who are each individually licensed under this chapter but who fail to comply with Section 7029.

"Until the expiration of six months from the date of a suspension of a license pursuant to Section 7068, the provisions of this section do not apply to any person whose license was suspended pursuant to Section 7068 for failure to notify the registrar within the 10-day period, if such failure was due to inadvertence." (Italics added.)

[2]This and all other code references in the remainder of this opinion are to the Business and Professions Code.

he should in good conscience turn over to the plaintiff, but that this consideration is outweighed by the importance of deterring illegal conduct. Knowing that they will receive no help from the courts and must trust completely to each other's good faith, the parties are less likely to enter an illegal arrangement in the first place. [Citations.]

"In some cases, on the other hand, the statute making the conduct illegal, in providing for a fine or administrative discipline excludes by implication the additional penalty involved in holding the illegal contract unenforceable; or effective deterrence is best realized by enforcing the plaintiff's claim rather than leaving the defendant in possession of the benefit; or the forfeiture resulting from unenforceability is disproportionately harsh considering the nature of the illegality. In each such case, how the aims of policy can best be achieved depends on the kind of illegality and the particular facts involved. [Citations.] *But we are not free to weigh these considerations in the present case. Section 7031 represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business outweighs any harshness between the parties,* and that such deterrence can best be realized by denying violators the right to maintain any action for compensation in the courts of the state [citation]." (Italics added.) (Accord, *Currie* v. *Stolowitz* (1959) 169 Cal.App.2d 810, 816-817 [338 P.2d 208]; *Cash* v. *Blackett* (1948) 87 Cal.App.2d 233, 237 [196 P.2d 585]; see generally 53 C.J.S., Licenses, p. 715; Note 82 A.L.R. 2d 1429, 1440.)

The basic claim of Lee & Co. that its noncompliance is excused by its own "neglect and inadvertence" demonstrates how the policies served by this legislation could quickly be eroded. To begin with, the majority do not consider the important fact that in the text of section 7031 as it read throughout the period here in issue (*ante,* fn. 1) the Legislature spelled out two specific exceptions to the prohibition against bringing or maintaining this type of action.[3] The exception added to the first paragraph in 1961, applicable to unlicensed partnerships or joint ventures in which all the members are individually licensed at all times, codified the holding of *Gatti* v. *Highland Park Builders, Inc.* (1946) 27 Cal.2d 687 [166 P.2d 265]. The exception comprising the second paragraph,

---

[3]It is noteworthy that the majority opinion (*ante,* p. 279, fn. 1) omits these exceptions from its quotation of section 7031.

enacted in 1957, placed a six-month moratorium on the bar of section 7031 in cases where a license had been automatically suspended under section 7068.2 for failure to notify the registrar within 10 days of the termination of employment of the licensee's qualifying responsible managing officer or employee, "if such failure was due to inadvertence." The present case, obviously, does not fall within either of these exceptions, the enactment of which is significant evidence of legislative intent. In particular, by adopting the second exception to section 7031 the Legislature showed it well knew how to excuse noncompliance on the ground of "inadvertence" if it was so minded. And even that limited excuse is now no longer available to erring contractors, for in its 1965 session the Legislature deleted the entire second paragraph of section 7031. (Stats. 1965, ch. 681.) When the Legislature enacts certain limited exceptions to a comprehensive regulatory statute such as the Contractors License Law, the courts should not lightly create further and different exceptions. (*Reynolds* v. *Reynolds* (1960) 54 Cal.2d 669, 681 [7 Cal.Rptr. 737, 355 P.2d 481], and cases cited.)

The reason for this rule of judicial reticence is well illustrated by the case before us. In its return to the alternative writ of prohibition Lee & Co. explains that "The license was not renewed on June 30, 1963, because Mr. Shepard, the office manager of J. W. Lee & Co. *whose responsibility it was to renew the license,* had a complete nervous breakdown at this time." (Italics added.) But from a legal standpoint it was *not* the responsibility of the office manager to renew the license; rather, the statute places that duty squarely on the individual qualifying as the responsible managing officer or employee, in this case Mr. J. W. Lee. Section 7068.1 declares in relevant part that "The person qualifying on behalf of an individual or firm under subdivision (a), (b), or (c) of Section 7068 *shall be responsible* for exercising such direct supervision and control of his employer's or principal's construction operations *as is necessary to secure full compliance with the provisions of this chapter* and the rules and regulations of the board relating to such construction operations. . . ." (Italics added.) Included within "the provisions of this chapter" is article 9 (§§ 7140-7145), which lays down the requirement of timely renewal of licenses.

The majority brush aside this point (*ante,* p. 285, fn. 4) on the assumption that, as used in section 7068.1, the phrase "construction operations" is limited to activities such as moving earth and building houses. This assumption is errone-

ous. The business of a general contractor may be said to have two interrelated aspects: physical labor at the job site, and office paperwork dealing with licenses, contracts, permits, invoices, accounting, etc. Each of these two activities is part of the total "construction operations," for the latter is the contractor's sole business. This court recognized as much in *Lewis & Queen,* where we said (at pp. 149-150 of 48 Cal.2d) that "the statutory provisions setting forth the qualifications for a license, and the causes for disciplinary action against licensees, show that the Legislature was as much concerned to protect the public from dishonesty and incompetence in the administration of the contracting business as in the actual use of bricks, mortar, and earth-moving equipment," citing *inter alia* section 7068, predecessor of the present section 7068.1.

The majority's construction of the statute, moreover, renders it largely meaningless. Section 7068.1 imposes on the responsible managing officer the responsibility of exercising such supervision and control of the construction operations "as is necessary to secure full compliance with the provisions of this chapter" and with the corresponding rules and regulations of the Contractors' State License Board. The parties have not supplied us with any relevant rules and regulations; but "the provisions of this chapter," i.e., the Contractors License Law (§§ 7000 et seq.), are for the most part directives governing the paperwork side of the contracting business, such as licensing (§§ 7066-7069), signing and display of licenses (§ 7075), license renewals (§§ 7140-7145), obtaining construction permits (§ 7031.5), reporting changes of personnel (§ 7083), reporting workmen's compensation coverage (§ 7125), and many others. What the majority overlook is that not one of "the provisions of this chapter" purports to regulate the manner in which physical labor such as earth-moving and building is to be carried out, for that aspect of the business is covered by local building codes. Thus, unless the phrase "construction operations" is taken to mean something more than just earth-moving and building, the statute's reference to compliance with "the provisions of this chapter" is futile. It is axiomatic that acts of the Legislature are not to be construed so as to render them either nugatory or meaningless.

Nor is the policy behind this statute difficult to detect. "Passing the buck" is an all-too-frequent human failing, especially in large organizations. Under the majority's view,

there is no magic in the choice of the office manager as the person "responsible" for renewing the license; presumably, therefore, the "responsibility" could also be delegated to the office boy, with the classic risks attendant to renewal during the fishing season. It is true that a corporate licensee may delegate to any of its employees, such as its office manager, the administrative task of preparing and filing the necessary applications for renewal of its license;[4] but it cannot thereby shift the primary responsibility for complying with the renewal statutes, which is imposed by law on its qualifying managing officer or employee. By placing this responsibility and other duties on a specific person, the legislation seeks to discourage intentional or negligent noncompliance resulting from the diffusion of responsibility that normally occurs when the licensee is a corporation or other multi-individual grouping. To accept Lee & Co.'s excuse would be, in effect, to nullify this important purpose of the Contractors License Law.

I turn now to the majority's claimed "fidelity to precedent." The opinion makes much of two asserted elements of the doctrine of substantial compliance, i.e., that the contractor held a valid license at the time of entering into the contract and that a renewal of that license was secured without further examination when the application therefor was belatedly made. I agree that if, as here, these elements are present, they are relevant and should be mentioned. But a fair reading of the decisions discloses that there is an equally if not more important third element of the doctrine which must be shown, i.e., that there was *at all times* a properly and currently licensed contractor on the job. The majority concede (*ante*, p. 283 fn. 2) that language in *Loving & Evans* v. *Blick* (1949) 33 Cal.2d 603, 608-609 [204 P.2d 23], and *Bierman* v. *Hagstrom Construction Co.* (1959) 176 Cal.App.2d 771, 777 [1 Cal. Rptr. 826, 82 A.L.R.2d 1424], "lends support to this reading" of *Gatti* v. *Highland Park Builders, Inc.* (1946) *supra*, 27 Cal.2d 687, but attack the propriety of such an interpretation. The majority assert that "it is significant, however, that the majority in *Gatti* did not even state that the partners did in fact possess valid licenses throughout the period of performance." This is erroneous. The *Gatti* opinion recites (at p. 688) that the appeal was presented on a settled statement of facts; that in their amended complaint the plaintiff contractors alleged that at all relevant times "they, and each of them,

---

[4]The qualifying managing officer or employee, however, must personally sign each such application. (§ 7067.6.)

were duly licensed building contractors''; and that the answer relied, rather, on the defense that ''plaintiffs' failure to procure a separate partnership license in their two names would prevent their recovery.'' The opinion then describes (at p. 689) the subsequently acquired license as ''an *additional* partnership or joint venture license'' (italics in original), clearly implying that the plaintiffs continued to hold their individual licenses at that time. (See also *id.* at p. 690.)

The majority next rely on *Citizens State Bank* v. *Gentry* (1937) 20 Cal.App.2d 415 [67 P.2d 364], but fail to mention that the controlling statute at the time of that decision required only that the contractor be duly licensed ''at the time the alleged cause of action arose'' (see 20 Cal.App.2d at p. 419), rather than, as today, ''at all times during the performance of such act or contract'' (§ 7031, *ante,* fn. 1). The majority give neither consideration nor effect to this deliberate change in the wording of the key statute.

The majority fail to discuss the most recent decision of this court on the question of substantial compliance, *Weiman* v. *Superior Court* (1959) 51 Cal.2d 710 [336 P.2d 489]. Although the majority cite this case once or twice for general propositions, nowhere in the opinion is there a statement of the rather simple facts and holding of *Weiman.* The court held (at p. 714) that ''the admitted facts showed that there had been a substantial compliance with the licensing requirements,'' citing both *Gatti* and *Gentry.* And what were the ''admitted facts'' listed by the court? Simply that ''John A. Nelson, individually, *was at all times a licensed contractor*; that he made the construction contract with the Weimans in his individual capacity; that thereafter he incorporated as John A. Nelson, Incorporated, and assigned the contract to the corporation; that the corporation was thereafter duly licensed during the course of the construction and has since *remained duly licensed at all times,* but that there was an interval between the time when the assignment was made by John A. Nelson, individually, to John A. Nelson, Incorporated, and the time when the corporation became duly licensed.'' (Italics added.) (*Id.* at p. 713.) The undeniable inference is that the *Weiman* court found substantial compliance in the fact that there was at all times a duly licensed contractor on the job, either the individual who first obtained the contract or his corporate *alter ego* to which he assigned the contract.

This same inference was explicitly drawn in *Bierman* v. *Hagstrom Construction Co.* (1959) *supra,* 176 Cal.App.2d 771,

a decision which receives curious treatment indeed at the hands of the majority. In *Bierman,* a written subcontract was entered into between a licensed painting contractor and a corporation constructing a housing project for the City of Los Angeles. The subcontractor began furnishing labor and materials on December 29, 1954, and received partial payment therefor. Through an unspecified "oversight," however, the subcontractor failed to renew his license when it regularly expired on June 30, 1955; some five weeks later, on August 3, he discovered the oversight and made the required application. The license was renewed in due course, and the subcontractor continued to furnish labor and materials until ordered to leave the project on October 19, 1955. In an action against the general contractor, the latter moved for summary judgment on the ground that the plaintiff subcontractor had not been licensed at all times during the performance of the contract and hence was barred from maintaining the proceeding by section 7031. The motion was granted.

The appellate court affirmed, holding that "In the present action, appellant's license was suspended from June 30, 1955, at least to August 3, 1955, and during that period of time, under the provisions of said section 7301 [*sic*], he was not authorized to act as a contractor. It is undisputed that during that period of time he acted under said contract and that a portion of the compensation he is seeking in the action is for labor and material furnished during that period. Under such circumstances appellant was precluded by the express terms of section 7031 from maintaining the action." (*Id.* at pp. 776-777.) The subcontractor urged substantial compliance, citing *Gatti, Gentry,* and *Weiman,* but the court (at p. 777) properly distinguished those cases as follows: "In the Gatti case the question was whether individuals, who were partners, could recover for work done by the partnership, which was not licensed. The individuals were *licensed at all times* during the performance of the work. In the other cases, wherein the question was whether a corporation could recover, it appeared that the individual who formed the corporation, or the corporation itself, had a *license at all times* during the performance of the work. *In other words, in those cases someone had a license at all times during the performance of the work.* In the present case there was a period of approximately five weeks when the plaintiff was not licensed." (Italics added.)

Commenting on *Bierman,* the majority reiterate (*ante,* p. 284) their "doubt concerning the accuracy of this reading of the prior decisions," without telling us how *Weiman,* for one,

can reasonably be read otherwise. The majority nevertheless purport to find that in the present case ''someone'' possessed a valid license throughout the period of performance of the contract. The status of the *Bierman* decision is thus left in confusion. On its facts it is directly in point; and if it is not to be followed, it should be squarely disapproved.

The next portion of the majority opinion is premised on a subtle change in the wording of the condition assertedly fulfilled here but lacking in *Bierman*. Since it is conceded that both Lee & Co. and its responsible managing officer, Mr. J. W. Lee, remained unlicensed for more than six months during the performance of this contract, the majority cannot find that there was at all times a duly licensed contractor on the job. Instead, the majority hold that substantial compliance is shown because the ''responsibility and competence'' of Mr. Lee were ''officially confirmed'' throughout the performance of the contract. Such ''confirmation'' is then found in the coincidental existence during this period of a properly licensed corporation, the San Leandro Rock Co., of which Mr. Lee was also the responsible managing officer.

This is a dangerous doctrine indeed. The majority emphasize, and I do not deny, that the qualifications of Mr. Lee which served as the basis for granting San Leandro Rock Co.'s license were also the basis for Lee & Co.'s belatedly renewed license. But if certain financial connections are present, a single individual may qualify as responsible managing officer for any number of corporations (§ 7068.1), no matter how unrelated their purposes or endeavors may be.[5] Under the majority's view, therefore, an interrelated group of construction corporations could violate with impunity the statutory requirements for renewal of their licenses provided that only one of their number, sharing the common responsible managing officer, maintained its license current. I cannot believe that the Legislature intended to allow such circumvention of the statute.

The danger, moreover, is well illustrated by the facts of the case before us. We have not been informed what the precise business of San Leandro Rock Co. is, but its classified listing is under rock and gravel sales rather than construction services. Unlike the corporations in *Gentry* and *Weiman*, it did not succeed to the rights and duties of the contracting party,

[5] For example, Mr. Lee appears to have been the responsible managing officer of at least three corporations at the time the affidavit of the registrar of contractors was prepared.

did not assume the task of finishing the construction project, and, for all that appears, never turned a stone at the job site. It follows that the mere coincidence of Mr. Lee's common connection with Lee & Co. and San Leandro Rock Co. cannot reasonably be magnified into an identity of interests between the latter such as was held controlling in *Gentry* and *Weiman*. In legal effect San Leandro Rock Co. remains a total stranger to this case, and there is no justification shown for allowing its license to be retroactively "borrowed" by Lee & Co. for the sole purpose of evading the prohibition of section 7031.

The majority strictly construe the *Gentry* opinion as disclosing no legal connection between the entity found to be licensed and the contract upon which suit was brought. Such an interpretation is unwarranted. From the recital in *Gentry* that the individual contractor requested his license to be renewed in the name of his construction corporation and thereafter "carried on and completed the work under the auspices of" that corporation, the only reasonable inference is that the contract was assigned to the new entity. More significantly, the majority omit any discussion of the *Weiman* case in this connection. In *Weiman,* the opinion expressly states (at p. 713 of 51 Cal.2d) that after the individual contractor incorporated his business, he "assigned the contract to the corporation."

In any event, the question of liability on the contract is merely incidental here. The general purpose of the Contractors License Law, as the majority recognize, is to protect public health and safety by prohibiting incompetent or inexperienced persons from acting as building contractors. (*Gatti* v. *Highland Park Builders, Inc.* (1946) *supra,* 27 Cal.2d 687, 690.) Although the time of contracting is one of the "key moments" in this scheme for the reasons given by the majority, it is not the only one. The statutory requirement (§ 7031) that the contractor be licensed "at all times during the performance" of the contract demonstrates the Legislature's determination that it is equally important for the health and safety of the public that a competent and experienced contractor be on the job at all times while the work is in progress. Every one of the substantial compliance cases cited by the majority, when fairly read, contains this factual element; the present case does not.

Although one may well be sympathetic to the equitable arguments of the contractor, such arguments should be addressed to the Legislature rather than the court; the Contractors Li-

cense Law, as shown at the outset, is a comprehensive regulatory statute the wisdom of which is not subject to our review. Moreover, the trend of legislative amendments to this statute seems to be towards still stricter controls over the contracting business.[6] In these circumstances it is singularly inappropriate to carve out a new exception at this time, on the basis of a belated discovery of a licensed corporation sharing the same responsible managing officer as Lee & Co. but having no known connection with either the work done or the contract sought to be enforced.

I would grant the writ of prohibition as prayed.

Traynor, C. J., and McComb, J., concurred.

Petitioner's application for a rehearing was denied April 5, 1966. Traynor, C. J., McComb, J., and Mosk, J., were of the opinion that the petition should be granted.

---

[6]As noted above, in its 1965 session the Legislature deleted the "inadvertence" exception contained in the former second paragraph of section 7031. Other changes made in 1965 include the enactment of new section 7028.3 (allowing injunctive relief against unlicensed contractors) and new section 7033 (requiring a signed statement that a contractor's license "is in full force and effect," for issuance of a city business license).