**POWER CITY COMMUNICATIONS, INC., a corporation, Plaintiff,**

v.

**CALAVERAS TELEPHONE COMPANY et al., Defendants.**

Civ. No. 9802.

United States District Court
E. D. California.

Jan. 9, 1968.

Johnson & Stanton, San Francisco, Cal., for plaintiff.

Mazzera, Snyder & DeMartini, Stockton, Cal., for defendants.

## MEMORANDUM AND ORDER

MacBRIDE, Chief Judge.

The somewhat complex facts underlying this litigation should be set forth in some detail before a discussion of the two legal issues before the court is undertaken. The summary below is primarily gleaned from plaintiff's "Memorandum of Argument" filed May 1, 1967.

On September 14, 1964, a written contract was entered into by Power City Construction and Equipment, Inc. (hereinafter referred to as "Power City Construction") and the principal defendant, Calaveras Telephone Company, for the installation and construction of telephone facilities in Calaveras County, California. Plaintiff is Power City Communications, Inc., a Washington corporation. Power City Communications purchased the "communications division" of Power City Construction on May 28, 1964. This division was engaged in telephone construction and installation work. Power City Communications wished to bid on the job in question but could not do so because it was not yet licensed by the State of California. To circumvent this requirement, it submitted its successful bid and signed the contract in the name of Power City Construction. Permission from Power City Construction to proceed in this manner was allegedly obtained through a "gentlemen's agreement" with Mr. Charles Walters, President and majority shareholder of Power City Construction.

Power City Communications performed the work on the project with substantially the same personnel as manned the "communications division" of Power City Construction. In the course of construction several unresolved disputes arose and in May, 1966 Power City Communications brought this action for damages based on misrepresentation and breach of contract.

After a pre-trial conference, the parties have filed memoranda on two questions as directed by the court. These questions are: (1) Is plaintiff entitled to maintain this action despite the provisions of § 7031 of the California Business and Professions Code? (2) Can a provision in the contract prohibiting assignment of the contractor's rights and obligations be waived by acts of the parties? In addition to discussing these issues as suggested by the court, defendants have moved for summary judgment based upon what they consider to be negative answers to both of these questions under

the facts of the instant case. Since the questions have been thoroughly briefed and affidavits have been presented by both sides, I will also rule on the motion at this time.

By way of introduction, the first issue as set forth above presents one of the most interesting questions dealt with by this court in some time. *Erie* (Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)) has been ebbing lately; the question is whether it has receded as far as plaintiff contends.

Section 7031 of the California Business and Professions Code provides in part:

> No persons engaged in the business or acting in the capacity of a contractor, may bring or maintain any action in any court of this State for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract * * *.

Defendants assert that since plaintiff was not licensed "at all times" during the performance of the contract,[1] plaintiff is foreclosed under California law, applicable through *Erie*, from maintaining this action.

Rule 17(b), Federal Rules of Civil Procedure provides that "[t]he capacity of a corporation to sue or be sued shall be determined by the law under which it was organized." Section 18.27.080 of the Revised Code of Wash-

ington, enacted in 1963, provides as follows:

> No person engaged in the business or acting in the capacity of a contractor may bring or maintain any action in any court of this state for the collection of compensation for the performance of any work or for breach of any contract for which registration is required under this chapter without alleging and proving that he was a duly registered contractor at the time he contracted for the performance of such work or entered into such contract.[2]

However, on March 21, 1967 the Washington legislature enacted Senate Bill No. 245 which provides in part:

> RCW 18.27.080 shall not apply to any agreement or contract or performance of work or breach of contract covering the period from August 1, 1963 to December 24, 1965 or action pending thereon not foreclosed by the entry of a final judgment by or against any person in the business of acting in the capacity of a contractor. Wash. Legislative Serv., 1967 Regular Session, p. 270.

It appears, therefore, that there was no limitation on the capacity of unlicensed contractors to sue in Washington on causes of action arising during the time period relevant here.[3] Plaintiff maintains that Washington law is applicable in this case under Rule 17(b).

Before resolving the apparent conflict between California law and Rule 17(b) I wish to note that despite the language of § 7031 which prevents suits "in any court of this state," I have con-

---

1. Plaintiff admits in its memorandum filed May 1, 1967 that it did not become licensed until the job was approximately 50% completed. An affidavit from one of defendant's attorneys filed July 26, 1967 contains a certified copy of plaintiff's application for a contractor's license. The exhibit reveals that the application was received by the Contractor's State License Board on March 30, 1965 and the license was issued on April 20, 1965.

2. Section 18.27.090 lists exceptions to § 18.27.080 including "[P]ublic utilities op-

erating under the regulations of the public service commission in construction, maintenance or development work incidental to their own business." Plaintiff argues that this exception somehow applies to it, but a fair reading of the section does not include contractors who are doing work *for* a public utility.

3. This is assuming that Washington would apply its own rules of capacity in a case such as the present one. The court has not been able to find Washington authority on this point.

cluded that the section is more than a mere "housekeeping" rule designed to promote an efficient state judicial system. California statutes providing for licensing of contractors were intended to protect the public against dishonesty and incompetence in the administration of the contracting business and in the performance of contracts. Lewis & Queen v. N. M. Ball Sons, 48 Cal.2d 141, 308 P.2d 713 (1957).

In the not-too-distant past there would have been little question that California law controls here. A line of post-*Erie* cases beginning with Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947) seemingly left no doubt that the forum state's rules of capacity are controlling when a conflict exists with federal law. A pre-*Erie* case, David Lupton's Sons v. Automobile Club of America, 225 U.S. 489, 32 S.Ct. 711, 56 L.Ed. 1177 (1912), stands for the proposition that if a corporation could sue in the state in which it was organized, it could sue in federal court. The Court held that the state of the forum could not control capacity of corporate litigants in federal courts. In Angel v. Bullington, supra, Mr. Justice Frankfurter, writing for the majority, noted:

> Cases like David Lupton's Sons Co. v. Automobile Club * * * are obsolete insofar as they are based on a view of diversity jurisdiction which came to an end with Erie Railroad v. Tompkins * * *. That decision drastically limited the power of federal district courts to entertain suits in diversity cases that could not be brought in the respective State courts or were barred by defenses controlling in the State courts. 330 U.S. at 192, 67 S.Ct. at 662. (Citations omitted.)

A situation similar to that in *David Lupton's Sons*, supra, was before the Court after *Erie* in Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949). Plaintiff, a Tennessee corporation, sued defendant, a Mississippi resident, for a brokerage commission allegedly due from the sale of some Mississippi realty. The forum was the District Court for Mississippi. The district court, on motion for summary judgment, found that the contract was void under Mississippi law since plaintiff was doing business in Mississippi without qualifying under a Mississippi statute. The Court of Appeals for the Fifth Circuit reversed on authority of *David Lupton's Sons,* supra. The Supreme Court reversed. Mr. Justice Douglas stated in the majority opinion:

> Angel v. Bullington * * * followed the view of Guaranty Trust Co. v. York, 326 U.S. 99 [65 S.Ct. 1464, 89 L.Ed. 2079] * * *. The York Case was premised on the theory that a right which local law creates but which it does not supply with a remedy is no right at all for purposes of enforcement in a federal court in a diversity case; that where in such cases one is barred from recovery in the state court, he should likewise be barred in the federal court. The contrary result would create discriminations against citizens of the State in favor of those authorized to invoke the diversity jurisdiction of the federal courts. It was that element of discrimintaion that Erie R. Co. v. Tompkins was designed to eliminate. Woods v. Interstate Realty Co., supra at 538, 69 S.Ct. at 1237.

For other cases reinforcing this view of *Erie* see Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) and Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1939), both decided the same day as Woods v. Interstate Realty Co. For a critical appraisal of these cases, see Hart & Wechsler, The Federal Courts and the Federal System 668–678 (1953).

In 1965 the Supreme Court decided a case which appears to be at least a short step backward from the rather sweeping decisions implementing *Erie*. Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) involved an Ohio plaintiff who filed her complaint in the United States District Court for the District of Massachusetts to recover for injuries re-

ceived in an automobile accident allegedly caused by the negligence of a deceased Massachusetts citizen. Service was made upon the executor under Rule 4(d)(1), Federal Rules of Civil Procedure, by leaving copies of the summons and complaint with the executor's wife at his residence. The district court entered summary judgment for defendant because of the Massachusetts law requiring "in hand" delivery for service to be effective. The first circuit affirmed, citing Guaranty Trust v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), and Ragan v. Merchants Transfer Co., supra. The Supreme Court reversed, holding that Rule 4(d)(1) was constitutional and did not exceed the bounds of the Rules Enabling Act in which Congress empowered the Supreme Court to prescribe rules for the federal district courts in civil actions which do not abridge, enlarge, or modify "any substantive right."

Plaintiff contends that Rule 17(b) is similarly not within the ambit of *Erie*, and controls the question of capacity to sue in this case. After examining the chief premises of Hanna v. Plumer, supra, I cannot agree.

To begin with, the primary concern of the court in Hanna v. Plumer was "the threat to the goal of uniformity of federal procedure posed by the decision below." Id. at 463, 85 S.Ct. at 1139. Here, we are dealing with Rule 17(b), which by referring to the laws of the state of organization of a corporation is inherently non-uniform in application. The competing interests here are really not between California and the federal rules, but between California and Washington, with all significant aspects of the transaction taking place in California.

■ The "test" in Hanna v. Plumer, if there was intended to be one, is that in diversity cases the state rule must be followed instead of a conflicting Federal Rule only when it would be relevant to plaintiff's choice of forum. In this regard, the Court noted:

Petitioner, in choosing her forum, was not presented with a situation where application of the state rule would wholly bar recovery;[10] rather, adherence to the state rule would have resulted only in altering the way in which process was served. Id. at 469, 85 S.Ct. at 1143.

It is revealing that the Court cited both Woods v. Interstate Realty Co., supra, and Ragan v. Merchants Transfer Co., supra, in footnote 10. The conclusion to be drawn from this is that in a case where the forum state's rule affecting capacity to sue would bar a suit which would otherwise be permitted under the Federal Rules, state law must be followed.

I wish to make it clear that "outcome-determination" plays no part in my resolution of the issue here. This test, a creation of Guaranty Trust v. York, supra, was reduced to its proper perspective by Mr. Chief Justice Warren when he stated:

"Outcome-determination" analysis was never intended to serve as a talisman. * * * Indeed, the message of York itself is that choices between state and federal law are to be made not by application of any automatic, "litmus paper" criterion, but rather by reference to the policies underlying the Erie rule. Hanna v. Plumer, supra, 380 U.S. at 466–467, 85 S.Ct. at 1141.

■ The Court noted in Hanna v. Plumer that the *Erie* rule has never been used to void a Federal Rule. I believe the time is appropriate, and I therefore conclude that under the facts of this case § 7031 of the Business and Professions Code is determinative of the plaintiff's capacity to sue, rather than Rule 17(b).

Plaintiff has a second argument in answer to defendant's motion. Under California law a contractor's "substantial compliance" with § 7031 excuses failure to meet the letter of that section. Plaintiff contends that it has "substantially complied" within the meaning of the California cases.

In Latipac, Inc. v. Superior Court, 64 Cal.2d 278, 49 Cal.Rptr. 676, 411 P.2d 564 (1964) the Supreme Court of the

State of California was faced with a suit by a contractor who held a valid license at the time of contracting for the first fifteen months of the contract, then let it expire by failing to pay the renewal fee. Ten months after the expiration the job was completed, and two months later the contractor renewed its license. The court, in a 4–3 decision, held that the contractor had substantially complied with § 7031, and allowed it to proceed in its action for the one-half of the contract price which allegedly remained unpaid. The majority set forth the three elements upon which the courts in California have relied for the application of the doctrine of substantial compliance. The court noted that it was not faced with the issue of whether less than all of these elements could constitute "substantial compliance" since all were present in that case. The elements will be discussed separately here.

1. *Plaintiff held a valid license at the time of contracting.*

This is perhaps the most important element. As the court stated:

> In determining whether or not a contractor has "substantially complied" with the statute and whether such substantial compliance has afforded the other party the effective protection of the statute, the courts have accorded great weight to the significant moment of the entrance of the parties into the relationship. The contractor who holds a valid license at the time of contracting executes a contract valid at its inception both as between the parties and as to third parties who might rely upon it. Latipac, Inc. v. Superior Court, supra at 282, 49 Cal. Rptr. at 680, 411 P.2d at 568.

The court noted further that "[a]s a corollary, the *absence* of a license at the time of contracting has figured prominently in decisions in which our courts have denied recovery for want of substantial compliance." Id. at 283, 49 Cal. Rptr. at 680, 411 P.2d at 568.

As mentioned previously, plaintiff was not licensed at the time of contracting and did not become licensed until several months later. In Gatti v. Highland Park Builders Inc., 27 Cal.2d 687; 166 P.2d 265 (1946), the case most heavily relied upon by plaintiff, the contractor, Gatti, held a valid license at the time of contracting. Later, he and his foreman, who was also licensed at the time the contract was executed, agreed to complete performance as a partnership. The defendant sought to avoid liability under § 7031 because the partnership license required by § 7029 was not secured. The court held that plaintiffs had substantially complied with § 7031, stressing that both Gatti and the foreman were licensed at the time of contracting.[4] The *Gatti* situation is thus clearly distinguishable on the most important aspect of that case.

2. *Plaintiff readily secured a renewal of its license.*

It is difficult to evaluate this element since plaintiff did not have a license to renew. However, as noted previously, plaintiff's application for a license was not received by the Contractor's State License Board until March 30, 1965. This was more than six months from the date the contract was executed, and is hardly evidence of "ready" compliance with the licensing statutes.

3. *The responsibility and competence of plaintiff's managing officer officially confirmed throughout the period of performance of the contract.*

Essentially, this element means that the individual who qualifies on behalf of the corporation, the "responsible managing officer", has been found through possession of an existing contractor's license to possess the requisite knowledge and experience. The court in Latipac, Inc. v. Superior Court found that it was immaterial whether the existing license which the manager had obtained was held by another contractor.

---

4. The California legislature codified the rule of the *Gatti* case in 1961 by amending § 7031 to make it inapplicable to un- licensed partnerships or joint ventures in which the members are all individually licensed.

From the record in the instant case it appears that the person who signed the application for plaintiff as "responsible managing employee", Mr. Robert Gustafson of Spokane, Washington, was serving in this capacity for another California contractor at the time of execution and performance of the contract in question. This licensed contractor was Power City Construction & Equipment, Inc. which signed the contract on behalf of plaintiff. It thus appears that this element of the doctrine of substantial compliance is present.

There is a possible fourth element of the doctrine which was not clearly dealt with in the *Latipac* case. This element was urged by the dissenters as being compelled by a "fair reading" of numerous California cases. It is "that there was *at all times* a properly and currently licensed contractor on the job." Latipac, Inc. v. Superior Court, supra, 64 Cal.2d at 292, 49 Cal.Rptr. at 687, 411 P.2d at 575. The majority indicated doubt "concerning the accuracy of this reading of the prior decisions." Id. at 284, 49 Cal. Rptr. at 681, 411 P.2d at 569. Nevertheless, without approving a lower court case which flatly held this to be a requirement, it noted that the requirement was met in the case before the court. For whatever this element is worth, plaintiff cannot show that it is present in this case.

While it is not clear whether the outer limits of the doctrine of substantial compliance have been reached by the California courts, I do not believe that the boundaries have been extended as far as plaintiff would have me go here. In any event, I do not believe that it is for a federal trial judge to decide that the reach of the doctrine should include the situation of an unlicensed contractor using a licensed contractor's signature to avoid California's licensing laws.[5] This is not a case where a license lapsed due to inadvertence or where the contractor was licensed in an individual capacity.

---

5. Section 7028 of the Business and Professions Code makes it a misdemeanor to "engage in the business or act in the

This is a case where an unlicensed contractor pursued a course of conduct with the intention of circumventing the law to receive the benefits of a contract which would ordinarily have been denied to it. In operating in this manner, it cannot now avoid the dangers it must have or should have anticipated.

I have considered plaintiff's other arguments and find them to be ably presented but without merit.

The resolution of the first question before me makes it unnecessary to reach the second.

It is therefore ordered that defendants' motion for summary judgment is hereby granted.

capacity of a contractor within this State without having a license therefor."