GRIFFIN, P. J.
 

 Appellant Walter P. Thomson, a real estate broker, brought this action for specific performance
 
 *198
 
 and for damages against defendants and respondents, Allison C. Honer and others, involving a claimed agreement or option to buy certain described real property in Kern County containing about 10,547.37 acres.
 

 Defendants filed their answer. Depositions and other pretrial discovery matters were had, and after pretrial conference the case was set for trial. Prior thereto defendants moved for summary judgment. Affidavits were filed by the respective parties and after hearing and consideration of these documents a summary judgment was entered in favor of all defendants and against the plaintiff. Plaintiff appealed and now claims there was a triable issue of fact shown, and accordingly, under section 437c, Code of Civil Procedure, and the general rules announced in respect to such motions, the court erred in granting the motion. Citing such authority as
 
 Gardner
 
 v.
 
 Jonathan Club,
 
 35 Cal.2d 343 [217 P.2d 961];
 
 Kimber
 
 v.
 
 Jones,
 
 122 Cal.App.2d 914 [265 P.2d 922];
 
 Krupp
 
 v.
 
 Mullen,
 
 120 Cal.App.2d 53 [260 P.2d
 
 629]; Desny
 
 v.
 
 Wilder,
 
 46 Cal.2d-715 [299 P.2d 257];
 
 Eagle Oil &
 
 Refining
 
 Co.
 
 v.
 
 Prentice,
 
 19 Cal.2d 553 [122 P.2d 264];
 
 Gibson
 
 v.
 
 Be La Salle Institute,
 
 66 Cal.App.2d 609 [152 P.2d 774] and
 
 Travelers Indemnity Co.
 
 v.
 
 McIntosh,
 
 112 Cal.App.2d 177 [245 P.2d 1065].
 

 In this connection, it is also argued that in addition to the affidavits filed, the court erroneously considered a certain deposition filed in the case as well as the files in an action pending in that court which was referred to in the agreement under consideration, citing
 
 Verdier
 
 v.
 
 Superior Court,
 
 88 Cal.App.2d 527 [199 P.2d 325];
 
 Family Service Agency of Santa Barbara
 
 v.
 
 Ames,
 
 166 Cal.App.2d 344 [333 P.2d 142];
 
 People
 
 v.
 
 City of Garden Grove,
 
 165 Cal.App.2d 794, 795 [332 P.2d 841], which are not factually in point.
 

 Plaintiff’s complaint alleges that about June 1, 1955, defendants were the owners of the property and that about that date plaintiff and defendants entered into an oral agreement in the form of an option whereby plaintiff was given the right to purchase this property and defendants agreed to sell it free and clear of any encumbrances, except 6 per cent of mineral rights, for $40 per acre, purchaser having the right to pay $40,000 into escrow and the balance (over and above a trust deed to which the property was then and now is subject) in cash at the close of escrow; that about October 1,1955, said oral agreement was reduced to writing and signed by the parties; that before the expiration of the option plaintiff tendered said $40,000 to defendants and demanded a convey
 
 *199
 
 anee through escrow; that plaintiff performed and/or tendered performance of all conditions imposed upon him in said option agreement and defendants refused to convey.
 

 As a second cause of action, it is alleged that during this period plaintiff spent large sums of money and time exploring the soil, water and drainage costs. The prayer is for specific performance and for damages alleged.
 

 Defendants, by answer, denied generally and specifically these allegations and allege that on September 30, 1955, defendant Allison C. Honer, for and on behalf of certain defendants, directed a letter to plaintiff (attached as Exhibit A) reading as follows:
 

 “Pursuant to our discussion today we, the undersigned, being all of the owners thereof, hereby agree to sell to you all that certain property described as follows: . . . containing 10547.37 acres more or less.
 

 “Free and clear of all encumbrances except:
 

 “1. Subject to Trust Deed of record to Sawyer Associates in the original amount of $206,250.00,
 

 “2. A reservation to Sawyer Associates of an undivided 6% of minerals therein.
 

 “3. The affect upon the property if any of suit No. 62382 entitled A. V. Worley v. M. H. Lane on file in the Superior Court of Kern County, California.
 

 “4. Taxes for 1955 ...
 

 ‘‘5. Seller to furnish policy of title insurance.
 

 “The total purchase price shall be an amount equal to the actual acreage computed at the rate of $40.00 (Forty Dollars per acre) less the amount owing under the trust deed.
 

 ‘ ‘ This offer to sell must be accepted by offeree on or before Oct. 10, 1955 by deposit in Escrow of letter of acceptance accompanied by check in the amount of $40,000.00.”
 

 Signed: Allison Honer Co., by Allison Honer; Ruth H. Wallace; Russell D. McLean; H. R. Brinkerhoff Co., H. R. Brinkerhoff, president.
 

 It is then alleged that there was no consideration for the execution and delivery of said letter. Defendants deny plaintiff ever tendered any sum of money to defendants or any of them, and allege that plaintiff failed to exercise the rights or privileges contained in said Exhibit A or to comply with the terms thereof in any respect.
 

 It appears that prior to pretrial, counsel for one defendant requested, in writing, that plaintiff answer certain interrogatories under oath pertaining to the agreement alleged in the
 
 *200
 
 complaint. Plaintiff gave the following answer, under oath, to the propounded question:
 

 “Does the agreement reduced to writing on or about October 1, 1955, as alleged in Paragraph IV of plaintiff’s complaint refer to the letter dated September 30, 1955, from certain of the defendants to plaintiff, Walter P. Thomson, herein, a photostatic copy of which is attached and marked Exhibit ‘ A’ ?
 

 “Answer : Yes. ”
 

 He thereafter stated there was a telegram sent to Ruth Wallace of the Allison-Honer Company requesting an extension of time to November 10 in which to exercise the option. He claimed he had possession of such a telegram but it was not produced. He said he offered a check for $40,000 to be placed in an escrow of defendants' choice but they refused it and he refused to deposit said sum in escrow under these circumstances because it would be useless.
 

 Plaintiff’s attorney then served on defendants a request for admission of fact in connection with the allegations set forth in the pleadings. Therein answering, defendants admitted they had caused the agreement (Exhibit A) to be written and signed, and that the other parties thereto also signed, but they denied they signed any extension of the option to November 10, 1955. They denied that plaintiff ever tendered $40,000 or any other sum, or requested that an escrow be opened.
 

 A pretrial conference order resulted, at which counsel for defendants stated that the defendants had never had the power to perform the option to convey the property involved in this action free and clear of encumbrance number three, designated in the letter of September 30, 1955 (Exhibit A), i.e., as to the effect upon the property, if any, of Suit Number 62382, entitled “A. B. Worley v. M. H. Lane” on file (and still pending) in the Superior Court of Kern County. He announced that he might subsequently move the court for summary judgment on this point. Plaintiff there took the position that defendants were obligated to clear this encumbrance or cloud on the title and accordingly an issue of fact remained to be decided by the trial court.
 

 Defendants ’ attorney gave notice to plaintiff that his motion for summary judgment would be based on the affidavits of defendants, served therewith, the pleadings, points and authorities, records and files in the action and in the action of
 
 Worley
 
 v.
 
 Lane,
 
 Suit Number 62382, and the deposition of plaintiff Thomson filed in the instant ease.
 

 
 *201
 
 Defendant Russell D. McLean’s affidavit recites generally that neither he nor the other defendants have signed any document directed to plaintiff in any form, other than Exhibit A, the letter of September 30, 1955; that said document was composed by plaintiff himself, in his own handwriting, (plaintiff denies this allegation, although a photostatic copy of the handwritten document is attached to McLean’s affidavit) and thereafter typed for the signature of the other signatories thereto; that at no time, before or after October 10, 1955, has plaintiff accepted the offer contained in Exhibit A or deposited any money in escrow or otherwise, nor has he ever made any claim that he was exercising his rights under that contract. He then avers that in connection therewith, about October 5, 1955, plaintiff directed a letter to defendant Ruth Wallace (photostatic copy attached) reading:
 

 “Dear Ruth: The associate missing when I was in your office is still out of pocket. I shall try my best to locate him this week. Two other members don’t appear to be at all enthusiastic about taking the property subject to the lawsuit. As I told you all, I personally am interested in buying only 1/5 or at most 1/4 of this property.”
 

 Signed: Walter P. Thomson.
 

 It is then alleged that the copartnership of Allison-Honer Company, Ruth Wallace, Russell G. McLean and H. R. Brinkerhoff Company, are the sole owners of the property described. Affidavits of other defendants, to the same effect, were served on plaintiff. In reply, plaintiff filed his affidavit reciting that within the time provided in Exhibit A and within the time agreed upon by the parties, he presented to Ruth Wallace and one other partner of the Allison-Honer Company and to all owners of said property, a check for $40,000 drawn on a certain bank where he had sufficient funds to meet it; that he was then advised by defendants named that they did not have clear title to the land in that the lawsuit of
 
 Worley
 
 v.
 
 Lane
 
 had not been finally disposed of and they could not complete the transaction at that time. The Worley action, according to the exhibits before us, which were also before the trial court, involved an action for declaratory relief, to impress a trust upon the property, for rescission and declaration of the rights of the parties. No disposition of the case is indicated.
 

 The deposition of plaintiff Thomson, filed with the court
 
 *202
 
 and considered by it on the motion, shows by his testimony that he first learned of the Worley litigation involving this property about September, 1955; and that he discussed the purchase of this property for subdivision purposes. He indicated that there was no written agreement between the parties other than Exhibit A and agreed he never wrote sellers about accepting the option agreement. He testified that about November 7 or 8, 1955, he went to the Allison-Honer Company office and asked if they had a quitclaim deed from Worley; that he offered them a check foi; $40,000 and said he was “ready to close the deal if they could deliver title without a cloud”; that they stated that until they got Worley out of the picture they were not in a position to give him clear title and he was not willing to accept the property with the Worley suit pending; that he made subsequent offers and told them, “Now, look here. I want you to button Worley up”; that he told them he would not “go through with the deal until they showed me evidence that they had Worley buttoned up.”
 

 Assuming all contradicted facts in favor of plaintiff, the main and remaining question is whether the instrument relied upon and admitted by plaintiff to be the only written agreement existing upon which his right to specific performance was, as a matter of law, enforceable.
 

 It is uncontradicted from the affidavits that at the time of the claimed tender the Worley suit was still pending and remained a cloud upon the signatories’ title to the property and they could not, at that time, deliver title free and clear of this so-called "encumbrance. ’ ’ The reasonable construction of this agreement, when construed in its entirety, is that plaintiff agreed therein to take the property subject to any cloud or lien on the property by virtue of that action. The uncontradicted showing is that plaintiff refused to accept it subject to this cloud or lien and it is indicated that he submitted some form of counteroffer. He also claimed that under its provisions it was the duty of defendants to clear the title and that he was entitled to specific performance or damages. The instrument, as held by the trial court, is not susceptible of plaintiff’s construction. At most, his claimed agreement amounts to a counteroffer which defendants refused to accept. This brings plaintiff clearly within the holding of this court in
 
 Tibbs
 
 v.
 
 Smart & Final Iris Co.,
 
 152 Cal.App.2d 618 [313 P.2d 636]. Furthermore, the instrument itself provides that the offer must be accepted by Thomson on or before October 10, 1955 (or possibly to the claimed extended date)
 
 *203
 
 by deposit in escrow of “letter of acceptance accompanied by cheek in the amount of $40,000.00.” It is conceded that no letter of acceptance was ever forwarded to defendants or thus deposited in escrow. Had such letter of unqualified acceptance been so deposited, defendants’ only obligation was to deliver a title, free and clear, with the exceptions noted, one of which was the effect upon the property of the Worley suit. The undenied affidavit of defendants shows that plaintiff’s letter of October 5, 1955, clearly indicates that plaintiff was interested in buying only one-fifth or one-fourth of the property and that two other members (associates) did not appear to be at all enthusiastic about taking this property subject to the lawsuit. This would indicate that plaintiff himself construed the instrument upon which he relies as requiring that he take the property subject to the lawsuit.
 

 The affidavits presented clearly support the trial court’s ruling that defendants were entitled to a summary judgment and in particular as to those defendants made a party to the action and whose names do not appear as signatories on the document in dispute.
 

 The files of the superior court in the Worley case were properly before the trial court for consideration on the motion. They were adequately referred to in the affidavits. Although there is a conflict in the decisions, it has been held that a trial court is authorized, under certain conditions, to take judicial notice of the condition of the records of a case which is actually pending in its court.
 
 (Schomer
 
 v.
 
 R. L. Craig Co.,
 
 137 Cal.App. 620 [31 P.2d 396] ;
 
 Bank of America
 
 v.
 
 Button,
 
 23 Cal.App.2d 651 [74 P.2d 81]
 
 ;
 
 18 Cal.Jur.2d 471, § 53.)
 

 Analyzing the statement made in plaintiff’s affidavit, other than the conclusions reached, no factual matters were related which would create a conflict as to the legal effect of the instrument upon which plaintiff relies. His deposition, though not technically speaking an affidavit, was before the trial court. In
 
 Cosper
 
 v.
 
 Smith & Wesson Arms Co.,
 
 53 Cal.2d 77 [346 P.2d 409], a deposition was considered an affidavit. (See also Code Civ. Proc., § 2009.) It was filed in the ease and it was duly noted that such document would be considered in disposing of the motion for summary judgment. We conclude that the trial court committed no prejudicial error and correctly considered the affidavits of the parties, plaintiff’s sworn answers to defendants’ interrogatories, the deposition of plaintiff and the records and files above indicated. In Procedure
 
 *204
 
 Before Trial (Cont. Ed. Bar) 869, chapter 23, section 33, it is said:
 

 “Code of Civil Procedure sec. 437c makes no provision for the use of depositions in support of or in opposition to a motion for summary judgment. Rule 56 of the Federal Rules of Civil Procedure, on the other hand, expressly permits the use of depositions and admissions.
 

 “When Code of Civil Procedure sec. 2016(d), added by the 1957 amendment, takes effect January 1, 1958, there will be no doubt as to the propriety of using the adverse party’s deposition. That section permits such a deposition to be used ‘for any purpose’ and authorizes the use of depositions ‘upon the hearing of a motion. ’ ”
 

 Judgment affirmed.
 

 Shepard, J., and Coughlin, J., concurred.
 

 A petition for a rehearing was denied April 11, 1960, and appellant’s petition for a hearing by the Supreme Court was denied May 18, 1960. Dooling, J. pro tem.,
 
 *
 
 participated therein in place of Spence, J.
 

 *
 

 Assigned by Chairman of Judicial Council.