[Civ. No. 934. Fifth Dist. July 15, 1968.]

FAMOUS BUILDERS, INC., Plaintiff and Appellant, v. DENNIS BOLIN et al., Defendants and Respondents.

Richard A. Case for Plaintiff and Appellant.

Richard E. Saulque for Defendants and Respondents.

CONLEY, P. J.—Famous Builders, Inc. initiated this action to foreclose a mechanic's lien on a house constructed for defendants pursuant to a written contract; the appellant requested payment in the sum of $9,109, and interest from August 29, 1963. The gross amount above mentioned included the fifth installment of the contract going to make up the total consideration of $22,636 (four installments having been paid during the progress of construction); in the litigation, the plaintiff also claimed two amounts for extras: $408 for electrical extras and $469.20 for flat concrete work. An answer was filed by the respondents denying the allegations contained in the complaint and alleging by counterclaim and also by cross-complaint damages of their own in the sum of $12,000; this sum was later reduced by $5,482 by the court in response to a motion to that effect by plaintiff, so that the net damages claimed by cross-complainants were $6,518. The judgment gave plaintiff $408 plus interest at 7 percent per annum from August 29, 1963, for the extra electrical work but denied all other recourse by plaintiff; it was also ordered that plaintiff have a lien on the real property to secure said amount of $408. The findings according to appellant were singularly defective in that nothing was said with respect to the counterclaim or cross-complaint. The court found that the plaintiff had a license to act as contractor up to and including June 30

but not afterwards; in this connection, the complaint alleges that the work done by the contractor continued up to August 1 of the year.

Summarizing, we are dealing with a contract for the construction of a house which was grossly finished at least to the point where the construction company filed a notice of completion; the contract called for a total price of $22,636 of which part had been paid in installments; in addition there were claims for two extras of $408 and $469.20. There are a counterclaim and a cross-complaint as to which no finding was made and by which the defendants claimed extensive damages. The respondents seem satisfied to pay for the extra work of electrical installation in the sum of $408 on the ground that that work was completed prior to June 30; this sum was allowed by the court. While this conclusion may well seem unjustified, as all extras become part of the total contract, defendants have not appealed and, consequently, we cannot disturb this part of the judgment. For the reason that the claim for the other extra for concrete flat-work in the sum of $469.20 became a part of the main contract it would not be proper to allow its recovery.

The trial court determined that the plaintiff and appellant was not entitled to a judgment for two good and sufficient reasons: (1) the plaintiff did not have a contractors' license from June 30 to the 1st day of August, although the plaintiff concedes that the entire work of construction was not completed until the end of July; (2) the plaintiff failed in important respects, some of which were wilful, to comply with the terms of its contract; there was no such thing as a substantial performance; there were many details of incorrect and faulty work. For both of these reasons, there could be no recovery.

It will be noted that instead of completely relying as a defense upon these two separate grounds, the defendants also pleaded at length, both by counterclaim and cross-complaint, that the failure of the plaintiff to comply with its contract resulted in damages to cross-complainants of very extensive nature. It was contemplated by the Legislature that when a party, contracting to build a building in a certain way, fails in essential matters to carry out its agreement but thereafter sues for the balance alleged to be due for complete performance under the contract, although, as here, thousands of dollars worth of building material and labor have been incorporated in the building and retained by the landowner, there must be a refusal by the court to accede to the construc-

tion company's demand; at the same time, it would be unjust in a case like this to hold that the construction company would be additionally liable on a cross-complaint or counterclaim for the amount of alleged damage so suffered by the person owning the land; such a permissive attitude on the part of the courts might well result in a double recovery. In the present instance, the defendants asserted by counterclaim and cross-complaint specific damages by reason of the failure of the plaintiff to perform as agreed. These allegations of damage were unquestionably indulged in by the owners of the land for the reason that, if, contrary to their denial in their answer of performance by plaintiff in accordance with its contract, a court should nevertheless find substantial compliance, the owners of the land could recover by virtue of the counterclaim or cross-complaint the actual damages suffered by them through failure of the plaintiff to perform as agreed. In the present instance, as has already been noted, the trial court found that for two good reasons there could be no recovery by the plaintiff, and it therefore became unimportant, as moot, that the court should also find in detail on the issues raised by the counterclaim and cross-complaint. No appeal has been taken by the cross-complainants and no ground for reversal could possibly accrue thereby in favor of the plaintiff here in view of the trial court's legitimate conclusion that no recovery could be made by the plaintiff on the original contract which formed the basis for the action.

 Intent upon its resolve to enforce honest and efficient construction standards, the Legislature insisted upon the possession of a license by contractors with a very severe penalty if they should not apply for or obtain such a license. Section 7031 of the Business and Professions Code is as follows: ''No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action in any court of this state for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract, . . .''

The actual implementation of section 7031 of the Business and Professions Code depends upon the selection of a responsible managing officer-employee, and it was obviously the intention of the Legislature to make the section in question *in pari materia* with section 7068.2 of the Business and Professions Code which provides in part as follows: ''If the individual qualifying for the license is a responsible managing

officer or responsible managing employee and ceases for any reason whatsoever to be connected with the individual or firm to whom the license is issued, the licensee and the responsible managing officer or responsible managing employee qualifying for such license shall notify the registrar in writing within 30 days from such cessation. If a notice is given the license shall remain in force for a reasonable length of time to be determined by rules of the board.''

In the instant case the responsible managing employee of the plaintiff was Walter Eugene Boyd. He gave notice in May 1963 that he would retire from his work, in accordance with the provision of law just quoted, and by action of the board the plaintiff was given until August 22, 1963, to replace Mr. Boyd. The contractor, plaintiff herein, did not replace Mr. Boyd or at any time secure a license for itself after its expiration on June 30th. This provision of law did not excuse the corporation from obtaining a license for itself for the period after June 30th.

The tendency in late years has been to mollify the penalty provided by section 7031 of the Business and Professions Code just as frequently and extensively as possible due to the severity of the section. This attitude was emphasized in the recent case of *Latipac, Inc.* v. *Superior Court,* 64 Cal.2d 278, 279-280 [49 Cal.Rptr. 676, 411 P.2d 564], where the majority opinion says: ''The statute in question, section 7031 of the Business and Professions Code, denies to unlicensed contractors the use of the courts for the recovery of sums owed to them for contracting services. In view of the severity of this sanction and of the forfeitures which it necessarily entails, our decisions record our reluctance to construe the statute more broadly than requisite to the achievement of its manifest purpose.''

However, all of the factors mentioned in the *Latipac* case were not present in the instant situation. In the *Latipac* case the contracting party, after the lapse of its license, actually later secured a license; here no later license was ever acquired. In the *Latipac* case one of those in charge of the work of the contracting corporation had been authorized by the board to act in similar work through a license granted to another business enterprise, but here no such license existed. We cannot stretch the *Latipac* holding to cover the present situation, and as we must take it as established beyond question that Famous Builders, Inc. did not have a license to act during part of the period for which recovery is sought herein

by it, this in itself is sufficient to warrant the finding and decision of the trial court that plaintiff was not entitled to recover here.

■ Furthermore, the evidence is clear that there was a series of substantial failures, some of them wilful, on the part of the plaintiff to construct the building in accordance with its contract. The respondents in their brief correctly point out the following deviations by plaintiff from the plans and specifications and defects in workmanship:

"(a) Flush ceiling lights were installed in a slipshod manner. . . .

"(b) No underlayment, linoleum or carpet was installed in the closets in the main hall. . . .

"(c) The sliding-glass door and frame in the family room were damaged. . . .

"(d) The sliding doors, windows and screens in the entire house were of a cheaper grade than called for on the plans and specifications. . . .

"(e) Fiber-glass screens were installed instead of aluminum screens as called for in the specifications. . . .

"(f) Cabinets and doors were poorly finished. . . .

"(g) A grill for heat vent in kitchen ceiling not properly secured. . . .

"(h) A make-shift step of wood was substituted for a concrete step in the service porch. . . .

"(i) No cove-base linoleum was installed in the service porch as required by the specifications. . . .

"(j) The heating system was not installed in the house according to the plans; rather it was installed outside the house. . . .

"(k) The metal-duct work of the heating and cooling system, between the unit and the house, was secured by tape only. The filter for said system was installed in a haphazard manner and the insulation inside the duct work was installed in such a manner that it would come out with the filter when the filter was removed. . . .

"(l) A five-inch gutter was installed instead of a seven-inch gutter as provided for in the specifications. . . .

"(m) Installation of the shake roof was improperly done near the roof jacks. . . .

"(n) The handrail on the staircase was not properly secured and was in a loose and unsafe manner. . . .

"(o) Carpet underlayment was installed in such a manner that it was loose underneath the carpet. Painting was done in

an unsatisfactory manner in that touch-up paint was needed throughout the house where cabinets and built-ins had been installed. . . ."

The record amply sustains the trial court's finding that the plaintiff failed to comply with the requirements of its contract with the defendants, and for this reason, as well as for the failure to have a contractor's license during the full period of work, the trial court's determination that plaintiff is not entitled to recover is sound.

 As already indicated, the failure of the court to make findings in response to the detailed allegations concerning the cross-complaint and counterclaim cannot be taken to constitute error of which plaintiff may complain in the circumstances of the case.

The judgment is supported by substantial evidence, and there was nothing done by the defendants which excused a failure to perform on the part of the plaintiff. The testimony of William Sinclair with regard to damages was properly admitted in view of the fact that the court preliminarily found that he was qualified as an expert; while part of his testimony deals with what he would bid to correct errors of the plaintiff, other parts may properly be considered as tending to establish the damages suffered by defendants.

The judgment is affirmed.

Stone, J., and Gargano, J., concurred.