[Civ. No. 35081. Second Dist., Div. Two. June 16, 1970.]

W. G. LEWIS, Plaintiff and Appellant, v.
ARBOLES DEVELOPMENT COMPANY et al.,
Defendants and Respondents.

**COUNSEL**

Perlmutter & Hall and Roger A. Saevig for Plaintiff and Appellant.

Walsworth, Seidel & Crail and John F. Keating for Defendants and Respondents.

**OPINION**

**ROTH, P. J.**—In a complaint to foreclose a mechanic's lien against respondents, plaintiff-appellant, a licensed general contractor, doing business as Curley's Drywall Construction Co., sued to enforce payment of a balance of $43,834.78 due on a written contract entered into specifically with Mayfair Development Company, one of respondent co-venturers. The contract required appellant to furnish materials and necessary labor for the installation of drywall in houses to be constructed upon land owned by American Hawaiian Land Company, another of respondents, for the agreed price of $223,661.29.

Appellant alleges in paragraph 7 of his complaint that between June 21,

1966 and May 21, 1967, he furnished labor and material used in said houses as required by the contract and in paragraph 8 he alleges that a balance of $43,834.78 is unpaid and owing.

Respondents, insofar as pertinent here, in paragraph VI of their answer referring to paragraph 7 of the complaint admit ". . . that at the special instance and request of [respondents], plaintiff did furnish and deliver drywall materials and labor for installation in the construction of said improvements . . . and that [respondents] promised and agreed to pay for the same." In paragraph VII, respondents deny they owe the balance claimed.

Respondents, in addition, plead five affirmative defenses and in a counterclaim assert that appellant ". . . failed to pay his workmen . . . As a result . . . another contractor [was] hired to finish the work . . . [and the] . . . additional cost . . . was the sum of $13,400.28)."; none of which are pertinent to the question for decision.

The pertinent parts of the pleadings raise questions of fact which require a trial for their disposition.

Respondents elected to move for and they obtained a summary judgment. Respondents' motion was bottomed on the ground that appellant was not a licensed contractor *at all times* during the existence of the contract. Respondents' legal position on the motion and before this court is that appellant's general contractor's license expired 45 days before the contract had been completed and that he was in violation of section 7031[1] of the Business and Professions Code and had no legal right to sue.

The minute order grants the motion ". . . on the grounds that plaintiff was not duly licensed as required by Business & Professions Code Section 7031 at all times during performance of the contract and the case did not fall within the exceptions of the Doctrine of Substantial Compliance of the statute in that it did not meet all or sufficient of the elements in the part relied upon by the Courts." Appellant appeals from the summary judgment of dismissal predicated on said minute order.

To support the motion for summary judgment respondents filed a single declaration signed by one McHone, secretary-treasurer of one of respondent companies. In pertinent part, McHone declared:

---

[1]"No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action in any court of this state for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract."

"On or about June 21, 1966, I entered into a written agreement with W. G. LEWIS, . . . .

"After entering into said agreement, and as disclosed by plaintiff's complaint, he performed drywall installation and at all times held himself out as a duly licensed drywall contractor."

The page in the clerk's transcript immediately following the McHone declaration consists of what purports to be a certificate of the Contractors' State License Board. The McHone declaration does not by reference, nor does anything else in the entire record make the purported certificate of said board a part of the McHone declaration. However, we assume that the purported certificate is intended to be a part of the McHone declaration. The certificate is dated "this 19th day of January, 1968," is signed by Rita Ward, "Supervising Clerk" and recites in pertinent part: "I HEREBY CERTIFY . . . Curley's Construction Co., Walter Gene Lewis, individual owner, 390 Ventura Avenue, Oak View, California, held contractor's license No. 239946, classification B-1 (General Building Contractor), which license was issued December 20, 1965, and was continuously in effect thereafter to April 3, 1967, when it was suspended pursuant to Section 7071.6 of the Business and Professions Code. Said license No. 239946 has not been in good standing since its suspension April 3, 1967."

Plaintiff filed two declarations in opposition to the motion. His declaration states in pertinent part:

". . . At all times mentioned in the Complaint herein I was an individual engaged in the general building contracting business under the fictitious name of Curley's Drywall Construction Co., also known as Curley's Construction Co.

"       .       .       .       .       .       .       .       .       .       .

"I was licensed as a contractor by the State of California from December 20, 1965, through April 3, 1967, as a general building contractor."

Margaret Hall in the second declaration filed on behalf of appellant says in pertinent part:

"On February 17, 1968, I put the following question to John Heath, Senior Deputy, Contractors' State License Board, 1945 South LaCienega Boulevard, Los Angeles, California, the following question:

" 'Does the Contractors' State License Board interpret the provisions of Chapter 9, Division 3 of the Business and Professions Code and the rules and regulations of the Board as prohibiting a licensed general building contractor from taking and performing a drywall subcontract in con-

nection with a tract of residential houses, the construction of each of which involves more than two unrelated trades or crafts, without first obtaining a supplemental C-9 classification?' and he replied the Board did not."

The parties concede that a general contractor qualifies to do the work herein contracted for without having a special drywall contractor's license. Respondents' position is that appellant has no legal capacity to sue because the McHone declaration supported by the purported certificate of the Contractors' State License Board shows as a matter of law that there has been no literal compliance with section 7031 of the Business and Professions Code and no substantial compliance with said section as required by *Latipac, Inc.* v. *Superior Court,* 64 Cal.2d 278 [49 Cal.Rptr. 676, 411 P.2d 564].)

In *Latipac,* the plaintiff had a license as required by section 7031 on March 22, 1962, when it entered into a contract with Marin County to grade and fill certain land. The contract price was $740,000, of which more than half remained unpaid at the time the action was brought. On June 30, 1963, 15 months after Latipac had commenced the work during all of which time Latipac performed under its contract, its license expired. Latipac nevertheless continued to perform and completed the job approximately 10 months thereafter, to wit, on April 28, 1964, during all of which 10-month period it was unlicensed. Latipac actually renewed its license on June 26, 1964—two months after it had completed the job.

Speaking in *Latipac,* the court said at pages 281-282: "Although plaintiff thus failed literally to conform to the commands of section 7031 of the Business and Professions Code, the courts of this state have not insisted upon such strict observance if it would transform the statute into an 'unwarranted shield for the avoidance of a just obligation.' [Citation.] If the facts clearly indicate that the contractor has 'substantially' complied with the statute and that such compliance has afforded to the obligor the protection contemplated by the statute, we have rejected the obligor's attempt to escape liability. [Citation.] . . . Examination of the record reveals that the instant case presents each of the elements upon which the courts have in the past relied for the application of the doctrine of substantial compliance. Since all these elements here concur, we need not determine whether any of them, singly or in more limited combination, would constitute 'substantial compliance.'

"We proceed to an examination of these elements: (1) the fact that plaintiff held a valid license at the time of contracting, (2) that plaintiff readily secured a renewal of that license and (3) that the responsibility and

competence of plaintiff's managing officer were officially confirmed throughout the period of performance of the contract."

■ Summary judgment procedure may be used as a "substitute for open trial . . .," (*Stationers Corp.* v. *Dun & Bradstreet, Inc.,* 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]) but such a judgment may be granted only if facts set forth in the declarations (or affidavits) of the moving party (*R. D. Reeder Lathing Co.* v. *Allen,* 66 Cal.2d 373-377 [57 Cal.Rptr. 841, 425 P.2d 785]) those of which the court may take judicial notice and those which are stipulated (*Ahmanson Bank & Trust Co.* v. *Tepper,* 269 Cal.App.2d 333, 342 [74 Cal.Rptr. 774]; *Martin* v. *General Finance Co.,* 239 Cal.App.2d 438, 442 [48 Cal.Rptr. 773]; *Goldstein* v. *Hoffman,* 213 Cal.App.2d 803, 814 [29 Cal.Rptr. 334]; *Thomson* v. *Honer,* 179 Cal.App. 2d 197, 203 [3 Cal.Rptr. 791]) are sufficient to sustain a judgment when the declarations of the opposing party do not show facts sufficient to raise a triable issue of fact. ■ In addition, although a moving party cannot rely upon his pleadings to cure or supplement his declarations (*Kimber* v. *Jones,* 122 Cal.App.2d 914, 918 [265 P.2d 922]) he may rely upon admissions contained in the pleadings of his adversary. (*Schulze* v. *Schulze,* 121 Cal.App.2d 75, 82 [262 P.2d 646]; *Joslin* v. *Marin Mun. Water Dist.,* 67 Cal.2d 132, 148 [60 Cal.Rptr. 377, 429 P.2d 889].)

In *Stationers,* the court says at page 417: "In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion." (*Rowland* v. *Christian,* 69 Cal.2d 108, 111 [70 Cal.Rptr. 97, 443 P.2d 561]; *Slobojan* v. *Western Travelers Life Ins. Co.,* 70 Cal.2d 432, 436-437 [74 Cal.Rptr. 895, 450 P.2d 271].)

■ Applying the rules governing summary judgment to the *Latipac* principle of substantial compliance and resolving all doubts as to the propriety of said judgment against respondents the record shows substantial compliance as defined by *Latipac* and raises several issues of fact.

(1) Respondents admit that appellant was a licensed contractor continuously for approximately 10 months during which he performed the contract.

(2) Nothing in the declarations or in the record shows that appellant did not sometime after May 21, 1967 apply for a renewal of his license.

(3) There is no showing that appellant admittedly charged with the responsibility for the performance of the contract did not throughout the entire contractual period and until the final day personally perform and supervise the performance of all the work required by the contract.

(4) Respondents in fact admit, subject to their affirmative defenses and contentions, that the work was performed.

(5) No attempt is made to show, nor is it clear from the record, what work, if any, was done between April 3, 1967, and May 21, 1967.

(6) It has been pointed out that under the rules governing summary judgment a party is permitted to take advantage of admissions made in the pleading of his adversary. (*Schulze, supra; Joslin, supra.*) Other than the fact that a payment of $43,834.78 was not paid, there is no showing that all the work required under the contract was not performed prior to April 3, 1967.

The evidence may or may not show that labor and materials were supplied after April 3, 1967, or that an amount of labor and material considerably less than the unpaid balance of $43,834.78 was furnished after said date. It would seem that *Latipac* would automatically apply if all the work required by appellant was rendered prior to the expiration of his contractor's license on April 3, 1967. If the evidence showed instead that labor and materials were supplied after April 3, 1967 for the full amount of the $43,834.78, or in an amount less than $43,834.78, whether in either such situation there would be substantial compliance with *Latipac* is a question which we do not now decide.

We are satisfied that the record on its face as now before us shows substantial compliance as that term is defined by *Latipac*. It should be noted, however, that the *Latipac* court said at page 281: "Examination of the record reveals that the instant case presents each of the elements upon which the courts have in the past relied for the application of the doctrine of substantial compliance. Since all these elements here concur, *we need not determine whether any of them, singly or in more limited combination, would constitute 'substantial compliance.'* " (Italics added.)

The judgment is reversed.

Fleming, J., concurred.

**HERNDON, J.**—I dissent. Misapplying the controlling statutory and decisional law, the majority opinion reverses a judgment which faithfully applies the plain provisions of section 7031 of the Business and Professions Code to a case in which there is no dispute whatever as to any material fact. The record, including the affidavits supporting and opposing the motion for summary judgment, demonstrates the complete absence of any triable issue of fact.

The law as stated and applied in the majority opinion is in conflict with

the law as it has been enunciated in every previous California decision dealing with the doctrine of substantial compliance in the application of section 7031, including *Latipac, Inc.* v. *Superior Court,* 64 Cal.2d 278 [49 Cal.Rptr. 676, 411 P.2d 564], upon which it places its complete but mistaken reliance. Among other decisions in conflict with the instant decision are *Famous Builders, Inc.* v. *Bolin,* 264 Cal.App.2d 37 [70 Cal.Rptr. 17]; *Brunzell Constr. Co.* v. *Barton Dev. Co.,* 240 Cal.App.2d 442 [49 Cal. Rptr. 667]; *Bierman* v. *Hagstrom Construction Co.,* 176 Cal.App.2d 771 [1 Cal.Rptr. 826]; and *Harrison* v. *Butte Steel Buildings, Inc.,* 150 Cal. App.2d 296 [310 P.2d 126].

### The Undisputed Facts

Both the factual and the legal issues presented in this case are extremely simple and clearly defined. Every material fact is conclusively established by incontrovertible proof and is undisputed. The allegations of appellant's own complaint and the averments of his own declaration filed in opposition to the motion for summary judgment are fatal to his case. *His own sworn statements establish the undeniable truth that his license as a building contractor was suspended during the last seven weeks of the period during which he alleged that he performed under the contract.*

It is an uncontradicted fact that appellant's license was suspended on April 3, 1967, and remained suspended more than six months later when, on October 19, 1967, he filed his complaint in this action; that it remained suspended more than nine months later when the official certificate was issued; and it remained suspended almost eleven months later when he filed his declaration in opposition to the motion for summary judgment.

*Neither in his declaration in opposition to the motion nor in his pleadings nor in his brief filed in this court has appellant even so much as suggested that his contractor's license was ever reinstated following its suspension or that he ever applied for its reinstatement.*

In the second paragraph of his verified complaint appellant alleged that "At all times herein mentioned plaintiff has been a drywall contractor and duly licensed as such by the State of California." In the seventh paragraph of the same verified complaint appellant alleged that "Plaintiff did, between June 21, 1966 to May 21, 1967, both dates inclusive, at the special instance and request of defendants . . . perform, furnish and deliver drywall materials and labor for installation in the construction of said improvements . . ." In his declaration dated the 27th day of February 1968, and filed in opposition to the motion for summary judgment appellant declared as follows: "I was licensed as a contractor by the State of California from December 20, 1965, through April 3, 1967, as a general building contractor."

The last quoted sentence is the *only* statement to be found in appellant's declaration with reference to the status of his license. Manifestly, the specific statement in the last quoted sentence from appellant's declaration directly contradicts the general allegation of his complaint that he was duly licensed *at all times* during the period between June 21, 1966, and May 21, 1967, when, according to his complaint, he rendered the performance for which he seeks to recover in this action.

The rule that a party moving for a summary judgment may rely upon the admissions contained in the pleadings of his adversary is, of course, well established. (*Joslin* v. *Marin Mun. Water Dist.*, 67 Cal.2d 132, 148 [60 Cal.Rptr. 377, 429 P.2d 889].)

Added to the fatal effect of appellant's own admissions establishing that he was not licensed at all times during the period of performance but that his license had been suspended during the last seven weeks of that period are the undenied facts stated in the certificate of the Contractors' State License Board which respondents filed in support of their motion for summary judgment. The most pertinent paragraph of said certificate reads as follows:

"Curley's Construction Co., Walter Gene Lewis, individual owner, 390 Ventura Avenue, Oak View, California, held contractor's license No. 239946, classification B-1 (General Building Contractor), which license was issued December 20, 1965, and was continuously in effect thereafter to April 3, 1967, when it was suspended pursuant to Section 7071.6 of the Business and Professions Code. Said license No. 239946 has not been in good standing since its suspension April 3, 1967."

Thus, the certificate of the licensing authority not only confirms appellant's own admission that he was not duly licensed after April 3, 1967, but, most importantly, it proves the *reason* for the act of the licensing authority in suspending appellant's license, namely, his failure to comply with the statutory requirement for the maintenance of a bond or cash deposit in lieu thereof.

### Chronology

It is undenied and undeniable that the record conclusively establishes the correctness of the following chronology:

| | |
|---|---|
| June 21, 1966 | The contract was executed. |
| April 3, 1967 | Appellant's license as a contractor was suspended pursuant to section 7071.6 of the Business and Professions Code. |

| | |
|---|---|
| May 21, 1967 | Appellant was discharged and ceased performance. |
| October 19, 1967 | Appellant filed his complaint in this action. |
| January 19, 1968 | Contractors' State License Board issued its certificate stating that appellant's license had been revoked on April 3, 1967, and had not been reinstated as of that date, to wit, January 19, 1968. |
| February 5, 1968 | Respondents filed their answer and counterclaim together with their notice of motion for summary judgment and supporting documents. |
| February 28, 1968 | Appellant filed his declaration and points and authorities in opposition to said moton. |
| March 27, 1968 | Motion for summary judgment granted. |
| June 5, 1968 | Judgment entered. |

The only relevant factual showng made by appellant in opposition to the motion for summary judgment is that contained in his own declaration as quoted in the majority opinion. It is immediately obvious from a reading of this declaration that it confirms appellant's lack of a license from and after April 3, 1967, and that it states nothing which conceivably could be construed as a tenable basis for a claim of substantial compliance with the requirements of section 7031. Appellant has offered no excuse or explanation whatsoever for his failure to maintain his financial responsibility bond or for his failure to seek reinstatement of his suspended license.

### The Statutory Law

The Legislature of this state in enacting the Contractors' License Law has manifested its purpose to protect the public health and safety by prohibiting incompetent, inexperienced or financially irresponsible persons from acting as building contractors. (*Gatti* v. *Highland Park Builders, Inc.*, 27 Cal.2d 687, 690 [166 P.2d 265].) Among the most important and most necessary provisions of that comprehensive regulatory statute are those set forth in section 7031 of the Business and Professions Code, as follows: "No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action in any court of this state for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving

that he was a duly licensed contractor *at all times* during the performance of such act or contract, . . ." (Italics added.)

The statutory requirement of a bond or cash deposit in lieu thereof obviously is consistent with the salutary purpose of the legislation. Appellant's wholly unexplained and unexcused failure to comply with that requirement resulted in the suspension of his license pursuant to section 7071.6 of the same code. Added to this evidence of appellant's irresponsibility is his wholly unexplained and unexcused failure to act with reasonable promptness to seek a reinstatement of his suspended license. Indeed, as the chronology set forth above shows, the record conclusively establishes that appellant's license was suspended at least seven weeks before May 21, 1967, when, according to his own allegation, his performance under the contract was terminated. Equally significant is the fact that appellant's license had remained suspended more than six months when he filed his complaint, more than nine months when the official certificate was issued and almost eleven months when he filed his declaration in opposition to the motion for summary judgment.

### The Controlling Decisional Law

The only California decision bearing upon the application of the doctrine of substantial compliance as it relates to section 7031 cited or discussed in the majority opinion is *Latipac, Inc. v. Superior Court, supra,* 64 Cal.2d 278. The rationale of the majority opinion in *Latipac* argues against the holding of the majority in the case at bench only slightly less strongly than does the dissenting opinion in that case.

In *Latipac* the majority of the justices of the Supreme Court agreed with the conclusion of the trial court that the plaintiff-contractor in that case had established its substantial compliance with section 7031 by proof of the following three elements: (1) plaintiff held a valid license at the time of contracting; (2) plaintiff readily secured a renewal of its license; and (3) the responsibility and competence of plaintiff's managing officer were officially confirmed throughout the entire period of performance under the contract.

The record in the case at bench discloses that appellant was able to prove only the first of the three elements relied upon in *Latipac,* that is, that he possessed a valid contractor's license at the time he entered into the contract and during a portion of the period of performance. The instant record establishes that appellant did not "readily" secure a renewal of his license following its revocation and he offered no proof that his license was *ever* renewed. Finally, appellant herein has offered no showing tending

to establish the third element of compliance relied upon in *Latipac* or any other comparable factor favorable to a claim of substantial compliance.

As the majority and dissenting opinions in *Latipac* so clearly disclose, reasonable judicial minds were in disagreement with respect to the correct resolution of the debatable issue of law therein presented, that is, whether the contractor in that case had shown substantial compliance with section 7031. Whether one agrees with the majority or with the dissenting opinion in *Latipac,* I submit as a self-evident truth that the record in that case, which provided considerable material out of which to construct substantial compliance, stands in sharp contrast with the instant record which provides nothing but uncontradicted proof of *noncompliance.*

In the more recent case of *Famous Builders, Inc.* v. *Bolin, supra,* 264 Cal.App.2d 37, the identical issue of law was presented in a factual setting very similar to that of the instant case. In the cited case it appeared that the contractor's license expired on June 30, 1963, and that the contractor's performance was not completed until the 1st day of August of the same year. In affirming the judgment of the trial court adverse to the plaintiff-contractor, the Court of Appeal held that "the plaintiff and appellant was not entitled to a judgment for two good and sufficient reasons," one of which was that "the plaintiff did not have a contractor's license from June 30 to the 1st day of August, although the plaintiff concedes that the entire work of construction was not completed until the end of July . . ." (P. 39.) After referring to the decision in *Latipac, Inc.* v. *Superior Court, supra,* 64 Cal.2d 278, the decision continues as follows at pages 41-42: "However, all of the factors mentioned in the *Latipac* case were not present in the instant situation. In the *Latipac* case the contracting party, after the lapse of its license, actually later secured a license; here no later license was ever acquired. In the *Latipac* case one of those in charge of the work of the contracting corporation had been authorized by the board to act in similar work through a license granted to another business enterprise, but here no such license existed. We cannot stretch the *Latipac* holding to cover the present situation, and as we must take it as established beyond question that Famous Builders, Inc. did not have a license to act during part of the period for which recovery is sought herein by it, this in itself is sufficient to warrant the finding and decision of the trial court that plaintiff was not entitled to recover here."

*Bierman* v. *Hagstrom Construction Co., supra,* 176 Cal.App.2d 771, is a case presenting a factual situation far more favorable to the position of the appellant-contractor than that presented in the case at bench. A summary judgment adverse to the plaintiff-contractor was affirmed by Division One of this court.

In *Bierman*, a written subcontract was entered into between a licensed painting contractor and a corporation constructing a housing project for the City of Los Angeles. The subcontractor began furnishing labor and materials on December 29, 1954, and received partial payment therefor. Through an unspecified "oversight" the subcontractor failed to renew his license when it expired on June 30, 1955. Some five weeks later on August 3, 1955, he discovered the oversight and made the required application for renewal. The license was renewed in due course and the subcontractor continued to furnish labor and materials until ordered to leave the project on October 19, 1955. In an action against the general contractor, the latter moved for summary judgment on the ground that the plaintiff-subcontractor had not been licensed at all times during the performance of the contract and hence was barred from maintaining the action by section 7031. The motion was granted. In affirming the judgment the appellate court used the following language which demonstrates the striking similarity of the operative facts in that case (pp. 776-777): "In the present action, appellant's license was suspended from June 30, 1955, at least to August 3, 1955, and during that period of time, under the provisions of said section 7301, he was not authorized to act as a contractor. It is undisputed that during that period of time he acted under said contract and that a portion of the compensation he is seeking in the action is for labor and material furnished during that period. Under such circumstances appellant was precluded by the express terms of section 7031 from maintaining the action. It appears that plaintiff had been paid more than $60,000 under the provisions of his contract, and that by his complaint he was seeking further compensation and also damages allegedly resulting from Hagstrom's alleged acts of omission and commission, above referred to,—such as failure to coordinate the work of other subcontractors, etc., and such as his requirement that painting be done in hot weather, etc. It appears from defendants' pleadings, above referred to, that defendants were asserting that plaintiff's work was not satisfactory and that defendant Hagstrom had to perform most of the work.

"Appellant cites *Gatti* v. *Highland Park Builders, Inc.,* 27 Cal.2d 687 [166 P.2d 265]; *Citizens State Bank* v. *Gentry,* 20 Cal.App.2d 415 [67 P.2d 364]; and *Weiman* v. *Superior Court,* 51 Cal.2d 710 [336 P.2d 489]. In those cases it was held that the contractor had substantially complied with the licensing provisions of the code. Those cases are distinguishable from the present case. In the *Gatti* case the question was whether individuals. who were partners, could recover for work done by the partnership, which was not licensed. The individuals were licensed at all times during the performance of the work. In the other cases, wherein the question was whether a corporation could recover, it appeared that the in-

dividual who formed the corporation, or the corporation itself, had a license at all times during the performance of the work. In other words, in those cases someone had a license at all times during the performance of the work. In the present case there was a period of approximately five weeks when the plaintiff was not licensed."

In *Brunzell Constr. Co.* v. *Barton Dev. Co., supra,* 240 Cal.App.2d 442, the Court of Appeal affirmed the judgment dismissing the contractor's action after defendant's demurrer to its complaint was sustained without leave to amend. Appellant's arguments that it had "substantially complied" with the statutory licensing requirements were rejected. I deem it unnecessary to extend this dissenting opinion by discussing in further detail this and other California decisions which support the judgment of the trial court in the instant case. Nearly all of the relevant precedents are analyzed and discussed in *Latipac.*

### Summary Judgment Procedure Was Properly Utilized In This Case

As stated in *Stationers Corp.* v. *Dun & Bradstreet, Inc.,* 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]: "Numerous decisions have discussed the law of summary judgments, and the rules relating thereto are well settled. The matter to be determined by the trial court in considering such a motion is whether the defendant (or the plaintiff) has presented any facts which give rise to a triable issue. The court may not pass upon the issue itself. Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial."

In the case at bench no triable issue is presented because the period of performance is established by the allegations of appellant's own complaint and confirmed by the allegations of respondents' answer and counterclaim. The date of the suspension of appellant's license and the reason for that suspension are stated in the certificate of the Contractors' State License Board. Appellant's declaration in opposition to the motion for summary judgment does not deny any of the facts stated in the official certificate. Indeed, appellant's declaration *confirms* the fact that his license was suspended on April 3, 1967, and remained suspended during almost seven weeks of the performance period. The undenied certificate further establishes the fact that appellant's license remained suspended as of the date of the certificate nine months later.

It appears that in nearly every cited case dealing with the application of section 7031 the appellate courts of this state have treated the issue whether or not there was compliance, or substantial compliance, as a pure question of law. This is not surprising because the facts material to this issue almost always are inherently of such nature that if they are not established by the pleadings, they can be established by uncontrovertible proof such as that provided by appellant's own complaint, his own declaration and the uncontradicted certificate of the licensing authority in the case at bench.

Six enumerated statements found in the majority opinion are either erroneous or misleading; my comment follows each of these quoted statements:

(1) "Respondents admit that appellant was a licensed contractor continuously for approximately 10 months during which he performed the contract." Respondents made no such admission contrary to the established fact. The fact as alleged in appellant's own complaint is that he performed during a period of exactly *11* months commencing on June 21, 1966, and ending on May 21, 1967, and in his own declaration appellant states that he was licensed only "through April 3, 1967." As I have pointed out, the certificate of the licensing authority confirms the suspension of appellant's license on April 3, 1967.

(2) "Nothing in the declarations or in the record shows that appellant did not sometime after May 21, 1967, apply for a renewal of his license." Appellant has not questioned the authenticity or the truthfulness of the certificate of the Contractors' State License Board which shows that his license was suspended on April 3, 1967; that it remained suspended more than six months later when, on October 19, 1967, he commenced this action, and more than nine months later, on January 19, 1968, when the official certificate was issued. As previously stated, *appellant has never so much as suggested in any shape, manner or form that he has ever applied for reinstatement of his license.*

(3) "There is no showing that appellant admittedly charged with the responsibility for the performance of the contract did not throughout the entire contractual period and until the final day personally perform and supervise the performance of all the work required by the contract." The meaning, the materiality and the relevance of this puzzling statement eludes me completely. Appellant has not denied the fact that he was discharged and that he discontinued performance on May 21, 1967.

(4) "Respondents in fact admit, subject to their affirmative defenses and contentions, that the work was performed." It is self-evident that this is an equivocal and enigmatic statement. Certainly respondents' answer

admits that prior to the time of his discharge appellant had furnished materials and labor for which they had promised to pay. But their answer denies the alleged value of the labor and materials furnished and in their counterclaim they allege as follows:

"Plaintiff failed to comply with the terms of said agreement, in that plaintiff failed to pay his workmen who in turn refused to perform the necessary drywall installation. As a result of said breach by plaintiff, the agreement in question was cancelled and another contractor hired to finish the work in question. The total additional cost to finish said job over and above the revised contract amount was the sum of THIRTEEN THOUSAND FOUR HUNDRED DOLLARS TWENTY EIGHT CENTS ($13,400.28)."

(5) "No attempt is made to show, nor is it clear from the record, what work, if any, was done between April 3, 1967 and May 21, 1967." It is sufficient that appellant alleged in his complaint that the performance for which he sought to recover was rendered during the period "between June 21, 1966 and May 21, 1967, both dates inclusive . . ." The fact that this was the period of performance is undisputed. As I have shown, the record conclusively establishes that appellant's license was suspended during the last seven weeks of that period.

(6) After referring to the rule that in a summary judgment proceeding, a party may take advantage of admissions made in a pleading of his adversary, we find the following statement in the majority opinion: "Other than the fact that a payment of $43,834.78 was not paid, there is no showing that all the work required under the contract was not performed prior to April 3, 1967." This statement contradicts appellant's own allegation in the seventh paragraph of his complaint that "Plaintiff did, between June 21, 1966 to May 21, 1967, *both dates inclusive,* . . . perform, furnish and deliver drywall materials and labor for installation in the construction of said improvements, amounting in value to $223,661.29 . . ." (Italics added.)

Notice also must be taken of the following statement in the opinion: "The page in the clerk's transcript immediately following the McHone declaration consists of what purports to be a certificate of the Contractors' State License Board. The McHone declaration does not by reference, nor does anything else in the entire record make the purported certificate of said board a part of the McHone declaration."

What possible difference could it make whether or not the certificate was made "a part of the McHone declaration?" Appellant has not questioned the authenticity or the truthfulness of the certificate and I see no reason for this court to question it *sua sponte*. This official certificate con-

stitutes competent evidence of the facts therein stated and it served to bring to the attention of the trial court official acts which could be judicially noticed. (Evid. Code, § 452, and footnote citations; Witkin, Cal. Evidence (2d ed. 1966) Judicial Notice, § 167, pp. 153-155, and decisions cited.)

The majority opinion correctly quotes every material part of appellant's terse and self-defeating declaration. The fact that it is completely devoid of any semblance of a showing of substantial compliance is too obvious to justify further discussion.

The quotation from the only other declaration filed by appellant, that of Margaret Hall, contributes nothing whatever relevant to the determinative issue because, as the majority opinion correctly recites, there is no contention that appellant was required to have a specialty license as a drywall contractor. The trial court correctly concluded that the possession of a license as a general building contractor was sufficient to qualify a contractor to perform the work called for by appellant's contract.

*At No Time Has Appellant Asserted Reliance Upon The Doctrine*
*Of Substantial Compliance.*

It is a remarkable and significant fact that neither in the trial court nor in his brief filed in this court has appellant given the slightest indication that he relies upon the doctrine of substantial compliance as it relates to the requirements of section 7031.

Appellant's memorandum of points and authorities filed in the court below contains no reference whatever to the doctrine of substantial compliance and cites no decision dealing with that doctrine. And despite the explicitly stated ground for the trial court's order granting the summary judgment, appellant's opening brief herein does not even so much as mention the doctrine of substantial compliance. It does not cite *Latipac* or any other decision dealing with that doctrine. Under the heading, "QUESTION PRESENTED," appellant tenders the sole issue argued in his brief as follows: "Is one licensed as a general building contractor authorized to contract for and perform the work of a drywall contractor?" The mootness of this question which concededly was answered in the affirmative has been made clear.

Respondents thereafter filed their brief containing a clear and concise statement of the material facts and a correct statement of the determinative issue followed by argument discussing *Latipac* and other decisions dealing with section 7031. Nevertheless, despite his previous failure to discuss the decisive issue, appellant filed no reply brief and waived oral argument.

## *Conclusion*

The decision reversing the judgment of the trial court in this case constitutes a judicial nullification of section 7031 of the Business and Professions Code. The judgment should be affirmed.